TALCOTT A. SHAVER v. JNO. C. INGHAM, JNO. W. LESLIE ET AL.

| | |
|---|---|
| 58 | 649 |
| 123 | 492 |
| 58 | 649 |
| 138 | 4361 |
| 58 | 649 |
| 148 | 4402 |

*Master and servant—Dismissal for disobedience—Evidence of conversations —Irresponsive testimony.*

1. The fact of a conversation with a third person in the absence of the opposite parties to a case may be admissible to show the date of a negotiation with them when it would not be to show the terms of the negotiation itself.

2. It is not responsive to a question asking for a conversation held at a specified date, to add statements made by one of the participants to the other at a subsequent date.

3. The omission to strike out irresponsive testimony to which no objection is made and on which no exception is based is not ground for reversal, especially if the court has already refused to receive such testimony.

4. An employer has no arbitrary power to dismiss his employee for a disobedience to orders that involves no serious consequences and is not "willful" in the sense of being perverse, insubordinate or unreasonable; and its reasonableness is for the jury. Nor can disobedience be made a pretext for dismissal apart from the injury it causes. Whether even a menial or domestic servant can be dismissed for mere harmless disobedience—Q.

Error to Berrien.    (A. J. Smith, J.)    Nov. 19.—Jan. 6.

ASSUMPSIT.    Defendants bring error.    Affirmed.

*G. M. Valentine* and *Van Riper & Worthington* for appellants, as to the right to dismiss a servant: *M'Millan v. Vanderlip* 12 Johns. 165; *Lantry v. Parks* 8 Cow. 63; *Marsh v. Rulesson* 1 Wend. 514: 1 Pars. Cont. 521; *Jennings v. Lyons* 39 Wis. 553; *Leopold v. Salkey* 89 Ill. 412.

*A. H. Potter* and *N. A. Hamilton* for appellee.

CAMPBELL, C. J.    Plaintiff sued and recovered damages for his unauthorized discharge as foreman of defendants' fruit package factory at Benton Harbor. His claim was that on the first of March, 1884, having been previously employed, a new arrangement was made for one year, at two dollars

and a half a day. Defendants claimed that he was not employed for any fixed period, but was given employment when needed. He continued in the place of foreman until September 11, 1884, when he went to Lawrence to look after the foundation of a house that was being built for his mother, and just before leaving for that purpose, which was expected to detain him less than a day, he was discharged. There is a conflict of testimony on the facts,—he stating that the discharge was without any cause mentioned, beyond the will of defendants, and defendants claiming that he was discharged for going away against their desire.

The two important issues were therefore—*first*, the character of his employment as fixed or optional, and *second*, the lawfulness of his discharge.

Upon the first of these issues the plaintiff in the course of his testimony fixed the time when the bargain was made by reference to negotiations he had carried on with various other persons, and among others one Colby, who had sought to employ him, and whose treaty was defeated by the new arrangement. It was in substance that on one of the latter days of February and first day of March, plaintiff postponed a final answer to Colby until he should come to some definite conclusion whether or not to continue work with defendants, and that on Monday the third day of March, after he came to such an arrangement, he gave Colby his final answer declining to serve him.

It was drawn out on cross-examination that plaintiff's mind had been recalled to the time of his contract by remembering negotiations with other parties who wished to employ him, and by the answers he gave them. On re-direct examination he was asked : "How are you able to fix the time of this contract with Mr. Leslie as being the first day of March, with reference to Mr. Colby?" This was objected to, and exception taken to overruling the objection. He answered : "By telling Mr. Colby that my time is out ;— that my time was out. If I don't make an arrangement with them, I will commence with you. I will let you know on Monday. (This was Saturday.) My time was out yester-

day." The court had already ruled that the conversation with Colby concerning the nature of the engagement with defendants, being had in their absence, could not be received We can see no reason why the fact of a conversation was not proper, or why defendants could be damaged by such a statement. If it was not shown to refer to an agreement for a year, it amounted to nothing except as a question of dates, and as to that it was competent.

When Mr. Colby was placed on the stand he was asked: " What was the conversation the first day of March ? " This was objected to, and exception allowed to overruling it. The court held it was admissible to fix the time. Colby's answer to this question, so far as stating what plaintiff said, was that, when Colby asked if he would work for him, plaintiff answered, " My time is out, but I cannot tell you till Monday." There was no error in this. Colby however went on without further inquiry and mentioned that on Monday or Tuesday plaintiff told him he had hired for a year. This was not responsive to the question, but defendants did not object to it, or ask to strike it out, and no exception is based on it. When Colby was asked by plaintiff's counsel to relate the conversation had on Monday or Tuesday, the court at once refused to allow it; and would no doubt have ruled out the volunteered answer, if asked to do so.

Exception was also taken to a further question, whether on Saturday plaintiff gave any reason why he could not tell Colby whether he would accept his offer of employment. The answer given was that he had not yet closed his bargain, but would let him know on Monday, or the first of the week. There was nothing in this which could prejudice defendants.

The other errors assigned relate to the refusal to charge as requested, concerning defendants' right to dismiss plaintiff.

Upon the facts of the discharge plaintiff and Leslie, one of the defendants, are the only direct witnesses, although there is some other testimony as to admissions. According to plaintiff's testimony Leslie told him that defendants had made up their minds they had got through with him, and

on being asked for reasons, answered : "No words or argument about it." According to Leslie, the plaintiff's desire to go on his errand was known to the defendants, as he told Leslie that morning about it. Leslie says he urged him to stay, saying they could not spare him. "It was a very busy time, and he insisted on going. Had some business at Lawrence, I think he said, that he must attend to. I went to the other members of the firm and talked with them." He saw Shaver again afterwards, and says: "I went to Mr. Shaver after that and asked him if he insisted on going. He said that he did. I told him if he insisted on going, if his business was more important than ours, that he must attend to it at the neglect of ours, that he could go and stay ; that he could consider himself discharged under these circumstances, and he could go to the office and get his pay. He asked me some question in regard to it, and I told him I didn't wish to argue the question. That was the decision. I didn't wish to quarrel with him about it at all. It is not worth while to quarrel about it. It is the final decision of the case, and I turned and left him."

The court below left it for the jury to say whether the plaintiff was discharged without reasonable cause. No exception was taken to the charge as given, but defendants rest their case on the refusal to give two out of nine specific requests to charge, which were as follows:

6. If you should find that the plaintiff left defendants' employ without their consent, when his services were required, then you are instructed that that was a good cause for his dismissal.

7. If the plaintiff was informed on the day he left, by defendant Leslie, that if he went away that he might consider himself discharged, and if you find he did go, then he cannot recover.

It is somewhat questionable whether either of these requests is strictly borne out by the testimony. They must be read, in order to make them applicable at all, in accordance with Leslie's own showing. The going was no more than on an errand of short duration. There is no testimony tending to show a voluntary relinquishment of service, and if the sixth

request meant any such thing as that, it was not proper. But from the argument we understand that it was meant to cover the facts, and to apply to the temporary departure without leave.

Some cases were cited which are claimed to hold that the departure of a servant for a temporary purpose against the will of the master, authorizes dismissal without reference to the reasons existing. The case of *Turner v. Mason* 14 M. & W. 112, was one where a servant was dismissed for going to see her sick mother, who was supposed to be in danger of death. In that case the court called attention to the fact that it was not averred that the master was informed of the extreme character of the exigency, but the judges nevertheless expressed themselves in favor of his absolute right of dismissal whether so informed or not. No other case seems to go quite so far, but " willful disobedience " of orders is the general phrase used as justifying a discharge ; and in some few cases the courts have gone quite far in requiring an extreme rule of duty.

But this doctrine, which is certainly a harsh, if not an inhuman one, has not received entire favor, and has been confined to menial domestic service. In employments not menial and domestic, the case has been left to the jury with more or less latitude for the exercise of good sense.

In *Fillieul v. Armstrong* 7 Ad. & El. 557, the failure of a teacher to return within a day or two after vacation, although it was strongly urged that the course of the school was seriously interfered with, was held not sufficient when set up in a plea to answer the case made by the declaration, and no ground to justify the discharge. The language of the court is clear on the insufficiency of the showing, and it was suggested that even if actual loss was shown, it would be the ground of a claim for deduction of wages, and not of discharge, where there was no serious moral wrong. In *Callo v. Brouncker* 4 C. & P. 518, the jury were told that there must be moral misconduct, pecuniary or otherwise, willful disobedience or habitual neglect, to justify dismissal from service for a year ; and although both disobedience and ne-

glect of orders were shown in several instances, the court would not let the jury act upon them as serious enough to be sufficient. In that case the servant was a travelling courier. In *Edwards v. Levy* 2 F. & F. 94, where there was a single act of neglect accompanied by insolence, the court held the plaintiff's case should go to the jury, as this could not be held as matter of law ground for discharge.

The cases of *Cussons v. Skinner* 11 M. & W. 161, and *Smith v. Allen* 3 F. & F. 157, in addition to requiring disobedience to be willful, call attention to another element of decision which is especially applicable here. It is held not only that a sufficient cause must be shown, but also that the wrong was actually the real cause of dismissal, and not merely an ostensible reason.

Willful disobedience, in the sense in which the word is used by the authorities, means something more than a conscious failure to obey. It involves a wrongful or perverse disposition, such as to render the conduct unreasonable, and inconsistent with proper subordination. We are not prepared to hold that even in what is known as menial service every act of disobedience may be lawfully punished by the penalty of dismissal and the serious consequences which it entails upon the servant put out of place. No doubt domestic discipline may be closer than that in business employments. But there must be a limit to the arbitrary power of masters.

In such employments as involve a higher order of services, and some degree of discretion and judgment, it would in our opinion be unauthorized and unreasonable to regard skilled mechanics or other employees, as subject to the whim and caprice of their employers or as deprived of all right of action to such a degree as to be liable to lose their places upon every omission to obey orders, involving no serious consequences. It appeared in the present case that previous absences by permission had not created any confusion in the business, and it might have been thought and evidently was thought by the jury, if it was not so plain that they were bound to think so, that such a short absence as plaintiff desired could work no mischief and do no wrong. The fact that plaintiff was paid

by the day would furnish some aid in getting at such results. It is not pretended that a day's absence from sickness would be a serious drawback. (The only possible foundation for dismissal must rest on the idea that the spirit of insubordination was such as to show that plaintiff could not be relied on for substantially thorough service. The unreasonableness of his conduct was therefore properly for the jury to determine, if it could be left to them at all, and we have no doubt it could not be determined against the plaintiff by the court.) In the recent case of *Jones v. Graham & Morton Transportation Co.* 51 Mich. 539, we held that an employer cannot be the final arbiter in his own behalf whether a sufficient cause of dismissal has arisen, but in dismissing he must assume the responsibility of showing justification. That case is in point here, and the English cases cited, which go as far as any common-law authorities in favor of discipline, are not repugnant to it.

But we cannot overlook the other question. Upon the testimony of Mr. Leslie, standing alone, there is no conclusive showing that the occasion of plaintiff's visit to Lawrence was the moving cause, or anything more than an excuse for the summary and arbitrary course taken on his dismissal. Plaintiff's testimony is very clear that it was not the cause. The court could not have given either of the charges asked for, without losing sight of considerations which seem to us important and significant.

The judgment must be affirmed.

The other Justices concurred.