F. W. Oehme *vs.* Whittemore-Wright Company, Incorporated.

Suffolk.    May 9, 1932. — June 28, 1932.

Present: Rugg, C.J., Wait, Field, & Donahue, JJ.

*Practice, Civil,* Amendment, Exceptions. *Contract,* Performance and breach, Of employment. *Corporation,* Officers and agents. *Evidence,* Competency, Letters.

No abuse of discretion on the part of the judge presiding at the trial of an action was shown in his permitting the plaintiff to amend his declaration shortly before the close of the evidence, at a time when the plaintiff had rested.

At the trial of an action against a corporation for breach of a contract of employment, it appeared that the defendant's directors voted "to ask for the resignation of . . . [the plaintiff], to take effect at once"; and that after the vote was passed the plaintiff left the meeting and thereafter did no work. *Held,* that it was for the jury to determine, in all the circumstances, whether the defendant intended by the vote to discharge the plaintiff and the plaintiff was justified in so understanding the vote, or whether the vote was merely an invitation to resign which was accepted by the plaintiff.

One of the defendant's contentions at the trial above described was that the plaintiff's conduct was so insubordinate that the defendant was justified in discharging him. The plaintiff's testimony as a whole showed in substance that he was manager of a department of the defendant's business; that it was not a part of the duties of the defendant's president to interfere with his management of that department; that, although the plaintiff on certain occasions refused the president's requests for certain information pertaining to that department, he already had given such information to the president; that the president antagonized him by constantly asking for information which already had been given him or was readily accessible to him in other ways; that certain absences of the plaintiff from the defendant's

office, which he had declined to explain to the president, were occasioned by the defendant's business; that he did not disregard orders given him respecting his work; and that he declined to recognize any authority on the part of the president over his department. *Held*, that such testimony did not show as a matter of law that the defendant was justified in discharging the plaintiff; it was proper for the trial judge to submit the issue of insubordination to the jury.

The plaintiff, at the trial above described, having been asked whether he had declined to give certain information to the defendant's president, stated that he could not answer the question the way it should be answered; that there were reservations to the question which he should tell. Counsel for the defendant then asked him to answer the question and in his answer he stated a certain explanation for his conduct. *Held*, that it was not reversible error to permit this answer to stand.

It appearing at the trial above described that votes of the defendant engaging the plaintiff required some additional facts to explain the nature of his employment, there was no error in the admission of evidence as to the relationship between the plaintiff and the defendant in years preceding the making of the contract in suit, the judge having instructed the jury to disregard such portions of that evidence as had no bearing on the issues on trial.

A general exception to the admission, at the trial of an action, of a letter which contained both competent evidence and self-serving statements by the party offering it, must be overruled, the excepting party not having requested that any specific portion of the letter be excluded or struck out.

No prejudicial error appeared in the exclusion, at the trial of an action, of evidence of a certain statement by one who subsequently was called as a witness and gave the substance of the statement in his testimony.

CONTRACT. Writ dated October 5, 1927.

The action was tried in the Superior Court before *Donnelly*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $2,491.08. The defendant alleged exceptions.

*E. H. Abbot*, (*J. W. Allen* with him,) for the defendant.

*B. Morton*, for the plaintiff.

By THE COURT. The subjoined opinion was prepared by Mr. Justice Sanderson, and was adopted as the opinion of the court after his death by the justices who sat with him in the consideration of the case.

This is an action of contract in which the plaintiff in his declaration alleged that in consideration of his entering into the defendant's employment and manufacturing for the defendant certain oils according to his formulas, the defend-

ant agreed, about 1924, to pay the plaintiff a yearly salary together with a commission on all of a certain oil manufactured by the defendant, and in addition twenty-five per cent of the net profits of the oil department, with a stipulation that in the event of the plaintiff's death his widow was to receive the proceeds of the arrangement; that in lieu of said original agreement, in the year 1927 the defendant agreed to pay the plaintiff a flat sum at the rate of $5,000 per annum; that since about the first of August, 1927, the defendant has refused and declined to make such payment although the plaintiff has at all times been ready and willing to carry out his part of the agreement. The answer was a general denial, plea of payment, that the employment of the plaintiff was terminated for good and sufficient reasons without fault on the part of the defendant, and, further answering, that the employment was terminated by mutual consent.

After the plaintiff rested and shortly before the close of the evidence, the plaintiff, subject to the defendant's exception, was allowed to amend his declaration by adding a count stating, in substance, that in April, 1924, the board of directors, who were substantially all the stockholders of the defendant, entered into an agreement with the plaintiff, a copy of which is annexed to the declaration, and thereafter, in October, 1924, in consideration of the plaintiff's suspending the operation of that agreement, the directors caused the defendant to issue ten shares of the stock of the company in lieu of additional salary for the year 1924; that later, in consideration of the plaintiff's postponing the operation of the agreement and continuing in the employ of the defendant, the plaintiff's salary was increased by vote of the directors of the corporation in January, 1925, January, 1926, and January, 1927, at which date the salary was fixed at $5,000 per annum, to be paid in the event of the death of the plaintiff to his widow; that the salary was paid in monthly instalments, and since August 1, 1927, the defendant has refused and declined to make payments in accordance with the agreement, although the plaintiff has at all times been ready and willing to perform

his part of the agreement. The proposed agreement attached to the amended count in the declaration is as follows: "We will pay you in July next half the net profits on Olive Oil for the first six months of this year after settling up our books at that time, and again in January next after our books are balanced and profits determined. If the Oil business has shown a reasonable profit after the books are balanced in January, we will form a separate Oil Company, in which you are to be given one-quarter interest gratis, and also be President and a Director. When this is done, no further profits are to be paid you from the Olive Oil except those which would be included in your 25% of the profits of the Oil Company. We will also pay an increase of salary annually to be determined by the profits of the Oil business for the preceding year." This was signed by the three men who are respectively the president, the treasurer, and the factory superintendent, and who also at the time were the board of directors. The question whether the declaration should have been amended by adding this second count was in the discretion of the trial judge and on the record no abuse of discretion is shown.

The defendant contends that a verdict should have been directed for the reasons, among others, that the plaintiff was guilty of wilful default and general insubordination and because he voluntarily left the defendant's employment.

At a directors' meeting held in August, 1927, and attended by the plaintiff and other directors, on motion of one Wright, the superintendent of the factory, and seconded by one Whittemore, the president, "it was voted to ask for the resignation of Mr. Oehme, to take effect at once." After the vote was passed the plaintiff left the meeting and has done no work for the defendant since. The contention of the plaintiff is that he was then discharged; the defendant contends that the vote was merely an invitation to resign — an invitation accepted by the plaintiff and approved by the defendant. We are of opinion that, when all the circumstances are considered, the questions whether the defendant intended by the vote to discharge the plaintiff, and whether the plaintiff was warranted in so understand-

ing the vote, were for the jury. We think the defendant's rights were protected by the charge in which the jury were told, in substance, that if the plaintiff resigned he had no right of action against the defendant. The jury must have found, as they had a right to do, that the plaintiff was discharged. See *Shugg* v. *American Shoe & Leather Association*, 192 Mass. 167; *Jones* v. *Graham & Morton Transportation Co.* 51 Mich. 539.

The next question is whether the plaintiff had so conducted himself that the defendant had a right to discharge him. The principal contention of the defendant on this issue seems to be that the plaintiff had acted in such an insubordinate manner that he had forfeited his right to continue in the employment. The jury were instructed, in substance, that if the plaintiff was not loyal and faithful to the interests of the company, using his best ability to promote those interests, then a discharge would be justified and the plaintiff would be entitled to no compensation for his services. The trial judge in his charge defined insubordination and left it to the jury to decide whether there had been such insubordination on the part of the plaintiff as to justify the defendant in terminating the employment. Inasmuch as the jury have found that the termination of the employment was not justified, the question for our consideration is whether, on the admitted facts, the defendant was warranted as matter of law in discharging the plaintiff.

The plaintiff testified that there were occasions in 1927 when Whittemore, as president of the company, requested information which he declined to give; that he had declined to give the president information in regard to the cost of certain oils in his department after the plaintiff had told him several times; that on one occasion when the president asked him for information as to the amount of grape seed oil on hand he declined to tell him, and on various other occasions he declined to give information as to the amount of oil on hand. He also testified that there were times when he had been absent from the office and upon his return had refused to tell the president or the superintendent where he had been;

that he declined to recognize any authority of Whittemore over his department; that in 1926 he was engaged as manager of the oil department for that year, and that Whittemore then said he would not interfere any more with that department.   The relationship of employer and employee "imposes upon each . . . the duty to be reasonably respectful to the other both in words and behavior, and to refrain from insolent or imperious conduct . . . an implied term of the contract [on the part of the servant] is that he shall not be insubordinate but shall show just regard for the rights and person of the employer.   The reciprocal obligation of the master is that he shall not be arrogant or excite resentment, or wantonly wound the feelings of his employee.   But petty annoyances and trifling irritations are likely in many kinds of employment.   Not every act of discourtesy or every slight disrespect justifies a termination of the relation.   Insubordination imports a wilful disregard of express or implied directions and refusal to obey reasonable orders.   When this is established, it is such a breach of duty on the part of the servant as to warrant his discharge."   *McIntosh* v. *Abbot*, 231 Mass. 180, 182–183. The plaintiff was asked whether he remembered one occasion when he was asked how much grape seed oil there was on hand and he declined to give the information.   He said he could not answer the question the way it should be answered; that there were reservations to the question he should tell.   Counsel for the defendant asked him to answer the question and his answer was: "It seemed to be just a pastime with Mr. Whittemore to question everything.   It was just a steady process of antagonizing and asking every day, once in the morning and once in the afternoon, and there were figures right before him on the desk, on my desk, or the bookkeeper's desk and on the stock reports, and he kept this up constantly.   A person would be tired of the questions he would ask all day."   When the discussion which led up to the answer is considered, we are of opinion that it was not reversible error to permit this answer to remain in the case.   The whole testimony of the plaintiff shows that he "did not indubitably manifest a disposition

not to perform his contract. No order respecting his work was disregarded. He was acting under some provocation" and there was also ground for the belief on his part that he was in sole charge of the oil department of the defendant's business. *McIntosh* v. *Abbot*, 231 Mass. 180, 183. *Gold* v. *Spector*, 247 Mass. 110.

The president testified that the request for the plaintiff's resignation was due to delays in shipment, disappearance of production sheets, the trouble the plaintiff had with an employee named Mealey, his general reluctance to give information, the fact that production sheets were not kept up to date, and the fact that employees withdrew from the corporation. The last date mentioned by the president when the plaintiff refused to give information was in the early part of 1927. The jury could have found that it was not a part of the duties of the president to interfere with the plaintiff's management of the oil business. There was evidence that at a directors' meeting in 1926 the plaintiff said that for the success of the oil business the president's interference with it should stop, and that the president then said he would not interfere any more with that department. In both 1926 and 1927 the directors voted that the plaintiff should be in charge of the oil business. The defendant had been in communication with a man to take the plaintiff's place before the vote of August 1, 1927, was passed. The jury may have found that the occasions when the plaintiff refused to give information were not in any way the cause of or connected with the vote requesting his resignation.

In redirect examination the plaintiff testified that when he had refused to give the president information it was information he had given him shortly before; that no information was ever actually excluded from his knowledge. He also undertook to explain the reason for a delay in the shipment of oils on one occasion, and testified that there was no period except during his annual two weeks' vacation in which he was away from his office or out of town except on the business of the company; that when he was out of the office he was on the road selling goods manufactured by him.

The judge was right in leaving to the jury the issues relating to the alleged insubordination on the part of the plaintiff.

It is evident that the vote passed January 24, 1927, engaging the plaintiff "as manager of the oil department for the year 1927 at a salary of $5,000" would require some additional facts to enable the jury to understand what the oil department was and what the plaintiff was expected to do as manager. The historical background of the plaintiff's relations and work with the company would not be irrelevant as throwing light on what the parties understood by the vote. The jury were told to disregard to a large extent, except as it bore on the probability of the stories told by the plaintiff and the defendant, any evidence which had gone in with reference to the arrangements made for the years 1924, 1925, and 1926, and except as "whatever evidence has gone in with reference to those years bears on the issue which we are trying here, you will disregard any of that testimony with reference to what the contract was for those years." A part of the testimony objected to was competent to explain the nature of the employment, and we are unable to say that any part of it was prejudicial to the essential rights of the defendant. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474. *Putnam-Hooker Co.* v. *Hewins,* 204 Mass. 426. *Osadchuk* v. *Gordon,* 251 Mass. 540, 544.

Exception was saved to the admission in evidence of two letters dated respectively August 18 and August 23, 1927, as self-serving statements. The letters were objected to as a whole and no request was made to exclude or strike out any particular parts of them. They asked the defendant what arrangement would be made in respect to the plaintiff's salary for the rest of the year and what the company would pay him for his share of stock. They also contained statements in regard to his faithful services to the company, and others of a self-serving nature. If the plaintiff was wrongfully discharged, as the jury have found, it was not irrelevant for him to assume that his salary was going on and to inquire whether his compensation would continue.

Parts of the letters being admissible, the defendant is not in a position to contend on this record that other parts were incompetent.

Two employees of the defendant stated to the defendant's factory manager that their reason for leaving was that they could not work any longer under the plaintiff because of the treatment they were receiving. This testimony when offered was excluded, subject to the defendant's exception. The men referred to were later called as witnesses and testified, in substance, that they told the factory manager that they were leaving because they could not stand the attitude of the plaintiff or because it was impossible to get along with him. In these circumstances the defendant's essential rights have not been prejudiced by the exclusion of the evidence.

We have examined the other exceptions argued by the defendant and are unable to discover any error which could have prejudiced the defendant's essential rights.

*Exceptions overruled.*