ARTHUR J. MANSFIELD *vs.* E. COPELAND LANG & another.

SAME *vs.* CONSOLIDATED PRESS COMPANY.

Middlesex.     November 8, 1935. — February 4, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract*, What constitutes, In writing, Construction, Validity, Novation, Performance and breach, Of employment. *Frauds, Statute of. Corporation*, Officers and agents. *Agency*, What constitutes.

A written contract between A and B for the organization of a corporation of which B and his associates would have stock control, and A would be manager for a term not defined, and a contemporaneous letter from B to A fixing the term of A's employment at not less than three years if the business should be successful under his management, were construed to be parts of a single contract binding B to warrant A's employment by the proposed corporation for three years subject to the condition of successful management; and such contract was not illegal as against public policy.

It was not shown that after the making of a contract between A and B for A's employment by a corporation to be formed, the corporation assumed B's obligation to A or that A intended to release B therefrom, and there was no novation discharging B.

Where A and B made a contract providing for the formation of a holding corporation for two existing corporations and for the management by A of the "combined companies" for a certain period on condition that the "business" of the two corporations should be successful under his management, A could be found to have performed if the business of the corporations as a whole was successful though that of one of the two corporations considered separately was not.

In an action arising from the discharge of the plaintiff as manager of a corporation by its directors on the asserted grounds of his poor management, insubordination and misappropriation of small amounts of its funds, with conflicting evidence on those issues and evidence that the asserted reasons for the discharge were not the real reasons, the

jury could find that the plaintiff had been discharged without just cause.

An alleged contract by B and others for the employment of A for the term of three years, evidenced by a writing signed by B only, by force of G. L. (Ter. Ed.) c. 259, § 1, Fifth, did not bind the others without proof that B signed as their agent.

One cannot act as agent of a corporation before its organization.

TWO ACTIONS OF CONTRACT. Writs dated September 17, 1931.

The actions were tried in the Superior Court before *Walsh,* J.

*L. S. Nicholson,* for the defendants.

*S. R. Wrightington,* for the plaintiff.

CROSBY, J. These actions of contract were tried together before a jury. At the conclusion of the evidence the trial judge allowed motions filed by the defendants Ralph D. Leonard and Consolidated Press Company for directed verdicts, and the plaintiff duly excepted thereto. The judge refused to direct a verdict for the defendant Lang subject to his exception. Lang also excepted to certain instructions to the jury, which found for the plaintiff against him in the sum of $8,616. Lang filed a motion for a new trial, which was denied subject to his exception. The exceptions of the plaintiff in both cases, and the exceptions of the defendant Lang in the first case are before this court on a joint bill of exceptions.

It appears from the record that the plaintiff was engaged in the publishing and printing business in Boston, being the manager and controlling stockholder of two Massachusetts corporations, the Mansfield Printing Company and the Columbus Press, Inc. The defendants Leonard and Lang owned a majority of the stock of The Melrose Free Press Inc., which published a weekly newspaper in Melrose and carried on and conducted a commercial printing department, and which owned the Melrose Free Press Building Company, a corporation owning the real estate where the business was carried on. In the spring of 1930 conferences took place between the parties relative to combining the various corporations in one holding company under the

management of the plaintiff. An agreement (Exhibit 3) recited that it was made "this third day of June, 1930, by and between Arthur J. Mansfield, of Newton, Massachusetts, and E. Copeland Lang, of Belfast, Maine" and that "Whereas, it is the desire of said parties to form a Holding Company, to acquire their said interests, thus effecting a unified control of the said Corporations under the management of said Mansfield; Now, therefore, . . . it is mutually covenanted and agreed" that a corporation should be organized and the parties should transfer to the new corporation their majority holdings in the existing corporations; that "Mansfield is to undertake the active management of the combined Companies, the headquarters of which will be located in the Free Press Building, Melrose, Massachusetts, and he is to take up his residence in Melrose, not later than September 1st, 1930, although his active management may commence July 1st, 1930, or at some other date to be mutually agreed upon"; that "Mansfield shall receive as compensation a regular salary of $500.00 monthly. In addition to this salary, he shall receive as compensation for services rendered, a bonus based upon an assumed ownership of 200 shares of Melrose Free Press, Inc., stock on which approximately $6.00 per share has been paid." On the same date Lang signed and delivered to the plaintiff a letter (Exhibit 2) which stated: "Confirming the understanding reached at the conference between us in company with Mr. Fyler and Dr. Leonard . . . last evening, I wish to say that we readily accede to your request for a Gentleman's Agreement whereby you may be assured that if the Melrose Free Press and the Mansfield Printing Co. business is successfully carried on under your management, your tenure will be at least three years and I may add my hope and belief that it will be for a very much longer period." The defendant Consolidated Press Company was organized pursuant to this agreement.

The first meeting of the incorporators was held on June 27, 1930, and the incorporators were Ralph D. Leonard, Arthur J. Mansfield and Edwin W. Fyler, who were then elected directors. By-laws adopted at this first meeting

did not provide for the removal of an officer. On July 1, 1930, the plaintiff started work at Melrose, and he made arrangements to purchase a house there and he and his family moved from Newton to Melrose. The charter of the Consolidated Press Company was issued under date of July 12, 1930. The second meeting of the incorporators was held on August 20, 1930, at which Lang and Mrs. Maude M. Johnson were elected directors. On the same date the first meeting of the directors was held, all the directors except Mrs. Johnson being present. At this meeting Lang was elected president, Dr. Leonard vice-president, the plaintiff treasurer, and Fyler clerk, and the following vote was adopted: "On motion duly seconded it was voted to appoint Arthur J. Mansfield to act as General Manager and to pay him a salary of $6,000.00 per annum." The directors also passed certain votes respecting the issuance of the capital stock of the new corporation in exchange for stock of The Melrose Free Press Inc., the Mansfield Printing Company, and the Columbus Press, Inc. At a meeting of the directors on August 3, 1931, the following vote was adopted: "On motion duly made and seconded, it was voted that whereas, having for more than a year attempted without success to secure the effective cooperation of Arthur J. Mansfield, Treasurer and General Manager of this Company and its subsidiaries, and because of his failure to successfully manage the subsidiary companies, and because of recent use of the company's funds and specific insubordination, that should Arthur J. Mansfield take any exception to the action of this Board in assuming that his verbal resignation tendered on May 20th was not still available as of this date, effective immediately, and for the reasons stated, he be and is hereby discharged from further connection with this company." Prior to this vote various disagreements had arisen between the parties. The plaintiff tendered performance after being notified of his discharge, and later sought other employment and brought the present actions to recover the difference between what he was able to earn during the remainder of the alleged term and the alleged salary. The answer in each case set forth,

in addition to a general denial, defences of the statute of frauds, resignation, and justifiable discharge. The important questions in the cases are (1) whether there was an employment agreement for three years which was legally binding and enforceable against any one or all of the named defendants, and (2) if there was, whether it was justifiably terminated.

There was evidence that, after considerable negotiations between the parties, the two papers, Exhibits 2 and 3, bearing the same date, June 3, 1930, were written and signed by Lang; that the letter was written at the plaintiff's request; that both papers were delivered to the plaintiff at the same time and that the plaintiff did not sign Exhibit 3 until after he had received Exhibit 2. It could have been found on these facts that these two instruments constitute a single contract between the parties. *Oakes* v. *Baker*, 244 Mass. 186. *Bresky* v. *Rosenberg*, 256 Mass. 66, 75. *Fellows* v. *Fairbanks Co*. 205 App. Div. (N. Y.) 271. In order to interpret the contract, the instruments entered into by the parties should be read together. *Skilton* v. *R. H. Long Cadillac La Salle Co*. 265 Mass. 595, 597. Am. Law Inst. Restatement: Contracts, § 235 (c), and cases cited. Construing the instruments together, it appears that the contract was entered into by and between the plaintiff, who owned the controlling shares of the Mansfield Printing Company, and Lang, who owned the controlling shares of The Melrose Free Press Inc.; that a new corporation was to be organized, to which should be transferred the shares held by each party in the named corporations in exchange for shares in the new corporation; and that the plaintiff should be the manager of the combined companies at a fixed salary and bonus, for a term of three years, "if the Melrose Free Press and the Mansfield Printing Co. business" was carried on successfully under his management. See *Reuter* v. *Ballard*, 267 Mass. 557, 562; *Pennell* v. *Lothrop*, 191 Mass. 357, 359; *Hastings* v. *Lovering*, 2 Pick. 214, 221; Williston, Contracts, § 306.

There is nothing in the agreement to suggest that the plaintiff was looking to the proposed corporation and not

to Lang for carrying out the agreement. As he through stock control could cause the corporation to carry out the agreement, the individual character of the undertaking on the part of Lang is plain. *Morse* v. *Tillotson & Wolcott Co.* 253 Fed. Rep. 340, 351. *Lyle* v. *Addicks*, 17 Dick. (N. J.) 123. The contract was not illegal as against public policy. *Manson* v. *Curtis*, 223 N. Y. 313, 319, 320. *King* v. *Barnes*, 109 N. Y. 267, 288. It was not fraudulent. The restraint placed upon the future freedom of action of Lang cannot be said to have been in fact or principle injurious to the interests of other stockholders. The term of office therein fixed was not permanent, not unlimited, but in view of the plaintiff's familiarity and grasp of the business was for a reasonable period only. See *Almy* v. *Orne*, 165 Mass. 126, 129. The term of three years was expressly conditioned on a successful management of the business. Any such agreement was also on the implied condition that the agreed tenure could be terminated at any time for cause. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68. Such an agreement is quite different from that in *Hellier* v. *Achorn*, 255 Mass. 273, cited by the defendants. In that case the promisor agreed that the promisee should hold office as long as he did his best for the corporation. The fact that the promisee might do his best for the corporation might not necessarily mean that he was the best man to control the corporation. In the present case the tenure was to last for three years and then only if the business was successfully carried on. The agreement on the part of Lang to cause the corporate action with respect to the management of the plaintiff was for no other private advantage than that which would accrue to Lang from the benefit to the corporation. Such an agreement was not in derogation of the interests of other stockholders. See *Guernsey* v. *Cook*, 120 Mass. 501, 502; *Bonta* v. *Gridley*, 77 App. Div. (N. Y.) 33, 39. Besides, such agreements as the one in the case at bar, even if regarded as open to the objection that they pledge in advance the action of officers or stockholders, may be sustained on the ground of the practical necessity that it would be impossible to organize a corporation if its proper management were not assured.

Although not set up in his answer, Lang contends that there was a novation in the case which discharged him from the obligation which he had assumed. A novation would import an assumption of Lang's contractual obligation by the new corporation, an assent by the plaintiff that the new company should carry out the obligation, and a release of Lang from his obligation. *Kirkup* v. *Anaconda Amusement Co.* 59 Mont. 469, 489, 490. See *Kirtley* v. *C. G. Galbo Co. Inc.* 244 Mass. 179, 182, 183. As to the assumption of the obligations by the Consolidated Press Company, the evidence does not show that the corporation contracted to employ the plaintiff for the three-year period on the named condition. The only vote which was taken by the directors with respect to the management of the plaintiff recited no term whatever, and nothing was contained therein with reference to a bonus. While the plaintiff received his salary check from the Consolidated Press Company, after it was organized, this does not show that he intended to release Lang from the obligation which he had assumed. *King* v. *American Powder Co.* 290 Mass. 464, 467–468. *Wells* v. *Fay & Egan Co.* 143 Ga. 732. It is plain that the facts fail to show a novation which would discharge Lang from his undertaking. *Tudor Press, Inc.* v. *University Distributing Co.* 292 Mass. 339, 340–341.

It could have been found that the plaintiff performed his part of the agreement. *Osadchuk* v. *Gordon*, 251 Mass. 540, 543, 544. He turned over his stock and received the stock in the new corporation. The jury could have found that he conducted the "Melrose Free Press and the Mansfield Printing Co. business" successfully. The contention of the defendant, raised at the trial by requests for rulings 16 and 17, that, although the business of the Melrose Free Press, Inc. was successful, the condition of the contract was not performed unless the business of the Mansfield Printing Company considered separately was also successful, is manifestly unsound. The word used in the agreement is "business." It is not in the plural; it plainly refers to the whole business. There was ample evidence that the busi-

ness as a whole was successful. The fact that the new corporation paid a dividend in May, 1931, was some proof of this fact. There was in addition the testimony of one accountant for the firm that "taking everything into consideration for the period from July 1, 1930, to July 1, 1931, the entire business (the four companies) was run at a profit that was reflected by the statements." There were also in evidence numerous letters from Lang to Mansfield commending him on the good work he was doing. The evidence, if believed, showed that Lang failed to fulfil the obligation resting upon him under the agreement. The plaintiff was not retained as manager of the corporation for three years, but was discharged at the end of one year and one month. Lang could have been found to be liable to the plaintiff for the damages sustained by reason of this failure of performance in the absence of evidence which required a finding as matter of law that the plaintiff was justifiably discharged. *Bonsall* v. *Platt*, 153 Fed. Rep. 126, 129. *Morse* v. *Tillotson & Wolcott Co.* 253 Fed. Rep. 340, 351. *Lewis* v. *Fisher*, 167 Mo. App. 674. *Kelner* v. *Baxter*, L. R. 2 C. P. 174. See also *Abbott* v. *Hapgood*, 150 Mass. 248.

It is held in this Commonwealth that a verdict will not be directed for a party unless the evidence when construed most favorably to the opposite party would not warrant a contrary verdict, or unless evidence by which such opposite party is bound would make impossible a verdict in his favor. *Salem Trust Co.* v. *Deery*, 289 Mass. 431, 433. The alleged facts upon which Lang relies as justification for the discharge of the plaintiff are as follows: (1) withdrawal by the plaintiff of $6 a week in addition to his regular salary; (2) withdrawal of $10 or thereabouts from the cash drawer as overtime pay; (3) charges of $10 a month to the company for garaging its car in the plaintiff's own garage after officers of the corporation disapproved of the practice; (4) contributions made by the plaintiff to the Young Men's Christian Association, the Boy Scouts, and the Unitarian Laymen's League, in vio-

lation of orders; and (5) use of the credit of the Consolidated Press Company for the benefit of the Mansfield Printing Company in disobedience of instructions.

With respect to the $6 withdrawal, the plaintiff testified on cross-examination that the withdrawal was a continuance of the practice in Columbus Press, Inc., whereby he had received $6 a week for sales expense, that is, for development of sales; that he received no special authority to do so; that it was an item of sales expense and it was so expended, possibly not all of it in each week, but he felt at liberty to expend it for that purpose if he wanted to; that practically all the expenses that he could recall at the end of the day or at the end of the week were represented by petty cash slips, on which he received cash in addition to the $6 a week. He testified on redirect examination "That after he went into this consolidation he was too busy to keep a record of every telephone call or carfare or the giving of a cigar or anything of that kind; that the $6 sales charge had a relation to small items of expense incurred by him." Although the testimony of the plaintiff was somewhat inconsistent and confused with reference to the $6 withdrawals, it cannot properly be said as matter of law that he made any admission that he deliberately and fraudulently withdrew money in addition to his salary, which was not to be used, or to reimburse him, for expenditures on account of corporate purposes. *Gold* v. *Spector*, 247 Mass. 110. At all times these withdrawals apparently appeared in the accounts. There was nothing in the plaintiff's testimony to show that he was conscious of any wrongdoing in relation to these withdrawals, and he made no attempt to deceive anyone with respect to them. It was a question for the jury on all the evidence whether these withdrawals justified his discharge. *Carpenter Steel Co.* v. *Norcross*, 204 Fed. Rep. 537. *Loos* v. *Geo. Walter Brewing Co.* 145 Wis. 1, 5–6.

Similar considerations apply with respect to the money which the plaintiff is alleged to have withdrawn for overtime work. He testified on cross-examination that he was not absolutely sure whether or not there were two occasions

when he did some special evening work, and received $10 therefor. Other testimony tended to show that he had received money for overtime. So far as the other evidence tended to show that money had been received by the plaintiff for overtime, it was in the form of withdrawal slips with the plaintiff's initials on them. It is manifest, therefore, that there was no attempt at deception on the part of the plaintiff, and the jury could properly find that he felt he was entitled to these sums. It was for them to determine whether these withdrawals constituted misconduct which justified the plaintiff's discharge. *Carpenter Steel Co.* v. *Norcross*, 204 Fed. Rep. 537.

The evidence relating to the question of the plaintiff's charging $10 a month for garage rent for the automobile of the company does not establish such insubordination, as matter of law, as to justify the plaintiff's discharge. The plaintiff testified that at a meeting on May 20, 1931, the question arose relating to garage rent which he was charging the company for its automobile; that he never was instructed by the directors in so many words to refrain from taking such rent; that he felt justified in collecting it, and had done so for at least five years while with the Mansfield Printing Company; that he intended to collect the rent as the directors had not passed a vote nor instructed him not to do so, but to stop when they ordered him to do so. The defendant Lang admitted that, if the automobile was placed in an ordinary public garage in Melrose, it would cost at least $10 a month and possibly more. There was no provision made for placing the automobile in a garage. The question of the propriety of this charge as it related to the justification for the discharge of the plaintiff was for the jury, which could have found that he never was expressly instructed not to take the rent, and that in the circumstances he retained the money in the honest belief that he was entitled to it. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317, 318, 319. *Gold* v. *Spector*, 247 Mass. 110, 111.

As to the other grounds claimed by the defendants to justify a discharge which involve primarily allegations of insubordination and disobedience, it is to be considered

that one holding a position of responsibility requiring the exercise of power is not bound to as strict adherence to directions of superiors as one in an employment involving the exercise of less responsibility and discretion. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68, 70. See also cases collected in L. R. A. 1918 C, 1030, 1032.

The evidence relating to the charitable contributions by the plaintiff is to the effect that the plaintiff was told by Lang and Leonard that they wanted him to go to Melrose and assume complete direction of the business, and that they wanted him to join all organizations and represent The Melrose Free Press Inc. just as he represented Mansfield Printing Company; that the plaintiff was informed by the directors that, so far as Rotary Club dues and similar personal expenses were concerned, they were not to be paid from company finances; that the plaintiff received a letter addressed to him at his residence in Melrose asking for a contribution to the Melrose Boy Scouts, and he made his own contribution of $2, and also made a contribution in his own name for $2 and paid for such second contribution with funds of The Melrose Free Press Inc. by that company's check dated April 29, 1931; that on the same day he made a contribution of $10 to the Melrose Young Men's Christian Association and paid his personal membership fee in the Unitarian Laymen's League of $1 out of the funds of The Melrose Free Press Inc. It could have been found from other evidence that these contributions which amounted to $13 were for business purposes and were not strictly personal. It is plain that it was a question for the jury to decide whether the making of these contributions of $13 was a violation of express orders, and, if so, whether it was a justification for the plaintiff's discharge. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317, 318, 319. *Loos* v. *Geo. Walter Brewing Co.* 145 Wis. 1, 5–6. *Shaver* v. *Ingham,* 58 Mich. 649. *Hamilton* v. *Love,* 152 Ind. 641. *Pollak* v. *Danbury Manuf. Co.* 103 Conn. 553, 558.

The same general question is presented by the evidence relating to the use of the credit of the Consolidated Press

Company for the benefit of the Mansfield Printing Company. The plaintiff testified that on December 30, 1930, he wrote to Lang concerning the Mansfield Printing Company, as to the advisability of lending money to it for short terms as occasion required, and Lang replied that as a distinctly emergency measure it might be all right, but should not be currently resorted to; that Mrs. Johnson, one of the directors, stated at a meeting on July 21, 1931, that if the Mansfield Printing Company credit was impaired there was no reason why they should not use Melrose Free Press Inc. credit; and that at the directors' meeting held in July, 1931, "he did not think Dr. Leonard or Mr. Lang said anything about it." There was evidence that the matter was further referred to by the plaintiff and Lang in correspondence, and that Lang expressed the idea that each company should operate "on its own merits"; that on July 22, 1931, the plaintiff ordered paper for the Mansfield Printing Company and charged it to The Melrose Free Press Inc.; that the paper was necessary to carry out an important job, and this was the only way the work could be done; and that the plaintiff regarded it as an emergency. There was testimony to the effect that the plaintiff was told not to use that credit. Whether the plaintiff was entitled to use such credit as an emergency measure without the consent of Lang presented a question of fact for the jury to decide. *Gold* v. *Spector*, 247 Mass. 110. *Shaver* v. *Ingham*, 58 Mich. 649.

We are of opinion that upon the entire evidence it could not have been ruled as matter of law that Lang was justified in discharging the plaintiff, especially where there was further evidence as shown by the record from which it could be found that the alleged grounds for the plaintiff's discharge were not the real reasons for such discharge. *Farmer* v. *Golde Clothes Shop, Inc.* 225 Mass. 260, 264. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68, 70. There was evidence for the jury which, if believed, would have warranted a finding that the reason for terminating the plaintiff's employment was a desire to place a friend of Lang in the plaintiff's place. In view of this evidence, the small

amounts involved, the conflicting evidence as to disobedience of certain orders and the absence of evidence of conscious wrongdoing on the part of the plaintiff, it is plain that the question of justification for his discharge was properly submitted to the jury. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68. *McIntosh* v. *Abbott,* 231 Mass. 180. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317. *Gold* v. *Spector,* 247 Mass. 110. *Oehme* v. *Whittemore-Wright Co. Inc.* 279 Mass. 558. *Pollak* v. *Danbury Manuf. Co.* 103 Conn. 553, 558. *Loos* v. *Geo. Walter Brewing Co.* 145 Wis. 1, 5–6. The exception of Lang to that part of the judge's charge where it was left to the jury to determine the reasonableness of the plaintiff's conduct is without merit. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68, 70. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317, 318, 319. The exceptions of Lang to the refusal of the judge to grant certain requested rulings need not be considered in detail. All of them have been considered. No error of law appears. What has hereinbefore been stated disposes of them. The denial of Lang's motion for a new trial fails to show any error of law. *Nicholas* v. *Lewis Furniture Co.* 292 Mass. 500, 507.

The plaintiff's exceptions cannot be sustained. A verdict was properly directed for the defendant Leonard and for the Consolidated Press Company. The plaintiff declared on a contract for three years' service, but the evidence does not show that any writing was signed by Leonard or the Consolidated Press Company for such a term. The statute of frauds pleaded by these defendants required a writing signed by them in order to bind them upon such an agreement. G. L. (Ter. Ed.) c. 259, § 1, Fifth. *Hill* v. *Hooper,* 1 Gray, 131. The act of Lang in signing the "Agreement" and letter did not bind the other defendants and satisfy the requirements of the statute. So far as the Consolidated Press Company is concerned, that company was not in existence at the time the papers were signed by Lang. It is plain that he could not then have been an agent of the corporation. *Penn Match Co.* v. *Hapgood,* 141 Mass. 145, 148. *John L. Whiting & Sons Co.* v. *Barton,* 204 Mass.

169, 172. There was no evidence that the Consolidated Press Company ever agreed in writing to employ the plaintiff for the three years. In signing the papers the defendant Lang did not purport to be acting for the defendant Leonard. No agency to sign a memorandum which could be binding on the defendant Leonard was therefore shown. *Freeman* v. *Fishman*, 245 Mass. 222, 226. *Allen* v. *Liston Lumber Co.* 281 Mass. 440, 445, 446.

The exceptions in both cases should be overruled.

*So ordered.*