**FRAMINGHAM SAVINGS BANK,
Plaintiff, Appellant,**

v.

**Joseph SZABO, Trustee, Defendant,
Appellant.**

**No. 79–1525.**

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1980.

Decided March 27, 1980.

George R. Desmond, Framingham, Mass.,
for plaintiff, appellant.

Marshall F. Newman, Boston, Mass., with
whom Newman & Newman, P. C., Boston,
Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMP-
BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The sole question to be decided on this
appeal is whether a corporation may be
bound under Massachusetts law by the
terms of a contract executed by its founder
for its benefit, when the corporation had no
legal existence at the time the contract was
executed, but when after legal incorpora-
tion the firm accepted the benefits of the
contract with knowledge of its terms. We
hold that the corporation in this case is
bound and therefore reverse the judgment
of the district court.

The relevant facts in this case are not in
controversy and may be briefly stated. In
February, 1972, George Sulak purchased all
the assets of the Framingham Lumber
Company for a new enterprise he was form-
ing, to be entitled Framingham Lumber
Company, Inc. The new company carried
on a business essentially identical to that of
the old company on the same site. The
same month, Sulak signed Articles of Incor-
poration for the new company in his roles as
president and treasurer. However, when
the Articles were mailed to the Secretary of
State of Massachusetts, they were rejected
by the Secretary and returned to Sulak's
attorney. More than one year later, in Oc-
tober, 1973, an employee of Sulak's attorney
hand delivered the Articles to the office of
the Secretary; they were again rejected
because the name of the new company was
too similar to that of the old, and the proce-
dure was explained whereby the defect in
incorporation could be cured. These proce-
dures were never followed. However, the
Articles were finally accepted and filed in
October, 1975, and Sulak's corporation com-
menced its legal existence at that time.
*See* Mass.Gen.Laws Ann. ch. 156B, §§ 6, 12
(West). Sulak was unaware until May,
1975, that his business remained unincorpo-
rated.

In August, 1974, Sulak's company purchased a 1974 White truck with purchase money furnished by plaintiff Framingham Savings Bank. The bank took a promissory note and a security interest in the truck; Sulak signed the documents as an officer of the corporation. In July, 1975, the bank again advanced the corporation purchase money, on this occasion for a 1974 Audi automobile, taking a similar note and security interest in the vehicle. The corporation defaulted on its payments to the bank in June, 1976, went bankrupt, and the bank repossessed the two vehicles and sold them for $25,675 and $3,450, respectively.

The bank brought this action against the corporation's trustee in bankruptcy to establish its entitlement to these proceeds, based on its security interests in the vehicles. The trustee defended on a number of grounds, including the contention that the security interest was invalid because the corporation did not exist at the time the agreement was formed. After a hearing and a conscientious examination of the authorities, the bankruptcy judge ruled that the security agreements did not bind the corporation, and, therefore, he required that the proceeds be included within the bankrupt's estate. The district court agreed with the reasoning of the bankruptcy court and affirmed its order.

We agree with the bankruptcy court as to the starting point for analyzing the validity of the security interest. The company could not be bound by Sulak's contract before it came into legal existence. *Abbott v. Hapgood*, 150 Mass. 248, 22 N.E. 907 (1889). *See Baker v. Bates-Street Shirt Co.*, 6 F.2d 854 (1st Cir. 1925). The area of controversy centers on whether or how the corporation could become obligated after its legal nativity. The bankruptcy judge relied on the strict rule announced in *Abbott v. Hapgood, supra*, 150 Mass. at 252, 22 N.E. at 908: "If

a contract is made in the name and for the benefit of a projected corporation, the corporation, after its organization, cannot become a party to the contract, even by adoption or ratification of it." *See also In re Jeandros Dye & Print Works, Inc.*, 22 F.Supp. 26, 29 (D.Mass.1938).

This rule is the extreme minority position. Most states hold that a corporation can be bound to a pre-incorporation agreement by some signal of knowing ratification or adoption of the contract. *See, e. g., Morgan v. Bon Bon Co.*, 222 N.Y. 22, 118 N.E. 205 (1917). *See generally* 1 Fletcher, *Cyclopedia of Corporations*, § 207 (1974); W. Cary, *Corporations*, 97–107 (1969). The rationale for the contrary Massachusetts rule stems from the premise that the individual executing the contract could not act as an agent for the not yet existing corporation. Therefore, the corporation could not become bound to the contract by ratification or adoption of the putative agent's bargain. Rather, to bind itself the corporation must introduce "into the transaction such elements as would be sufficient foundation for a new contract." *Koppel v. Massachusetts Brick Co.*, 192 Mass. 223, 225, 78 N.E. 128, 128 (1906). The corporation can become liable on the terms of the original contract, but only if its post-incorporation acts are sufficient independently to bind it to a new contract. *Pennell v. Lothrop*, 191 Mass. 357, 360, 77 N.E. 842, 844 (1906). The bankruptcy judge read this requirement as directing that only a novation would suffice, whereby the corporation would assume Sulak's obligation and the Bank would assent and release Sulak. *See Mansfield v. Lang*, 293 Mass. 386, 392, 200 N.E. 110, 113 (1936). The judge found no evidence of a novation and decided that he had no choice but to find that the corporation never agreed to give the bank a security interest.[1]

---

1. The bankruptcy court also explored equitable principles, but found none that could preserve the bank's security interest. The court ruled that the corporation, availing itself of the benefits of Sulak's bargain with the bank by using the vehicles, committed itself to make equitable restitution for the outstanding debt. Such duty, however, not being based on the contract, could not secure the bank's interest in the vehicles. The effect of this ruling was to confine the bank to the status of unsecured creditor.

The court also noted that the corporation should be estopped from denying its corporate existence at the time of the contract but that such estoppel would not carry the security interest beyond the point of bankruptcy. The

We think the bankruptcy court erred in its perception that *Abbott v. Hapgood* and its progeny require either an explicit new contract or a novation.[2] In *Holyoke Envelope Co. v. United States Envelope Co.*, 182 Mass. 171, 65 N.E. 54 (1902), plaintiff company entered into a contract with a partnership whereby it would transfer assets to a new company to be formed by the partners. The plaintiffs performed, the defendant corporation was incorporated, used the assets, but refused payment. Plaintiff sued and the defendant corporation demurred to the plaintiff's complaint, arguing that it was not a party to the contract and could not be bound. Although the Supreme Judicial Court affirmed the sustaining of the demurrer because of a pleading deficiency, the court, Chief Justice Holmes writing, sketched two theories that could allow the plaintiff to recover from the corporation if it proved properly pleaded facts. First, plaintiff's offer, if construed to have been made to the corporation, should be deemed to be a continuing offer which the corporation could accept after its birth by using the assets transferred by the plaintiff. Second, if the offer had not been extended to the corporation, "the defendant, although a stranger to the document, still might have accepted the conveyance of the property mentioned with knowledge of the terms set out in that document and upon an express or implied undertaking to perform them in consideration of the conveyance." 182 Mass. at 174–75, 65 N.E. at 56. Thus, Massachusetts appears willing to bind a corporation to the terms of a preincorporation contract, at least where the plaintiff obligee has already performed, despite the doctrine of *Abbott v. Hapgood*, by means of theories of continuing offer and implied contract.[3] For purposes of this opinion, we need concern ourselves only with the continuing offer theory, which, it should be noted, is theoretically consistent with *Abbott v. Hapgood* and *Koppel v. Massachusetts Brick Co.*, because it assumes that the company's post-incorporation acts create a new contract. There is neither adoption nor ratification.

Returning to the facts in the instant case, we think it plain that they come within the four corners of Chief Justice Holmes' continuing offer analysis. The bank made its offer to the corporation, not Sulak. Indeed, the entire transaction was carried out by both parties on the assumption that the contract was between the bank and Framingham Lumber Co., Inc. The bank looked to the corporation, not to the individual, Sulak, to perform the obligations of the contract. The corporation's name appeared on the security agreement and the certificates of title for the vehicles; the checks used to pay loan installments were drawn on the corporation's bank account. Moreover, the corporation, after its legal status was secured, used the vehicles and paid installments with knowledge of the terms of the contract. This knowledge must be presumed when the original contract was negotiated by the current president, trea-

---

trustee could not be so estopped because, as representative of the creditors, he is estopped by acts of the bankrupt only when the creditors are also estopped.

We need not comment on the correctness of either ruling.

**2.** Our holding allows us to avoid the question of whether the rule of *Abbott v. Hapgood* remains the law of Massachusetts. In *Pittsfield General Hospital v. Markus*, 355 Mass. 519, 521, 246 N.E.2d 444, 445 (1969), the court held: "A corporation succeeding a partnership is liable on the contracts or obligations of the latter where it either assumes them under express agreement or where the facts and circumstances are such as to show an assumption." The court left open the scope of this rule and did not discuss its relation to the requirement that a new contract be formed.

**3.** This analysis of Massachusetts law is not unique to this court. A noted commentator terms the rule in *Abbott v. Hapgood* "a much misunderstood dictum", and, relying on *Holyoke Envelope*, writes of the rule, "This comes far short of holding that by no means can the corporation become bound by the terms of the contract; and the Massachusetts court recognizes that it may become so bound by accepting the promoter's contract as an open offer to the corporation when formed, or alternatively by an implied contract to perform the terms by which the accepted thing was burdened." 1 Fletcher, *Cyclopedia of Corporations*, § 207 at 740 & n.8.

surer and majority stockholder in the company, and when the corporation believed in its own existence at the time of the contract. *See Chartrand v. Barney's Club, Inc.*, 380 F.2d 97, 100–01 (9th Cir. 1967). Thus, applying *Holyoke Envelope*, we hold that the agreement between the bank and Sulak, acting on behalf of the defectively incorporated firm, created a continuing offer to the putative corporation, and when the corporation entered into legal life and, with knowledge of the terms of the agreement, availed itself of the benefits of the bank's performance, it obligated itself to perform those terms just as if it had explicitly promised to do so.[4] The bank's security interest was, therefore, created when the company became legally incorporated and treated the vehicles as its own. *See* Mass.Gen.Laws Ann. ch. 106, § 9–204 (West).

Our holding eliminates the trustee's argument that he is not bound by the bank's security interests even if the interests were properly perfected. There was dispute in the bankruptcy court over whether the security interests were perfected and the judge never reached the issue. We, therefore, remand the case for resolution of this remaining issue.

*Reversed and remanded for further proceedings not inconsistent with this opinion.*

**4.** *Mansfield v. Lang*, 293 Mass. 386, 200 N.E. 110 (1936), relied on by the court below, is not inconsistent with our holding. The court there did rule that the corporation could not be bound by its promoter's agreement to employ the plaintiff at the projected firm for a number of years. However, the court explicitly ruled that plaintiff had looked to the individual defendant, not to the corporation, to carry out the agreement. 293 Mass. at 390–91, 200 N.E. at 113. Thus, the intent of the parties could not have permitted the interpretation that plaintiff made any offer to the corporation. Moreover, the court finally based its denial of liability of the corporation on a Statute of Frauds problem not pled in this case. We take additional comfort from Professor Cary's suggestion that *Mansfield's* reliance on the Statute of Frauds indicates erosion of the rule in *Abbott v. Hapgood. See* W. Cary, *Corporations*, 103 n.2.