MARY A. CASHMAN *vs.* EDWARD A. BANGS & others.

Suffolk.        December 3, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Devise and Legacy,* What estate. *Trust,* Alienability of interest of beneficiary. *Assignment. Equity Jurisdiction,* To reach and apply equitable interest. *Equity Pleading and Practice,* Costs.

Where one undivided third of certain real estate is devised to a trustee " the net income . . . to pay to my son E. during his life, or to permit him to occupy and enjoy the use of said property in common with his brothers as he may prefer," the right of E. to one third of the income is an equitable interest which can be reached by his creditors by a bill in equity at any time when he chooses to receive such income rather than to avail himself of the permission given him to occupy the property in common with his brothers; but, while he is availing himself of the privilege of such occupation, he has no right which his creditors can reach, since such privilege is personal to him and unassignable and inalienable.

By the provisions of a will an undivided one third interest in certain real estate was devised to a trustee " the net income . . . to pay to . . . E. during his life." E. made an agreement in writing for a good consideration that his life interest " shall remain so held in trust, but if at any time any of said properties shall be sold, the value of the life interest of E. in the proceeds shall be computed . . . and shall be " applied by E. or the trustee in payment of certain debts due other parties to the agreement, " or if the said trustee shall prefer he may invest E.'s share of such proceeds and pay or apply the income thereof during the life of E. upon such " debts. A creditor of E. who was not a party to the agreement sought by a bill in equity to reach and apply the interest of E. under the will, and contended that he was not affected by the agreement because it was

not recorded under R. L. c. 127, § 4, as a conveyance of real estate, and because he had no notice of it as a trust, as required by R. L. c. 147, § 3. A single justice ruled that the creditor could reach and apply in satisfaction of his debt only E.'s interest in the trust subject to the agreement, and the creditor appealed. *Held*, that the ruling of the single justice was correct, since no recording or notice of the agreement was necessary because it did not purport to convey any interest in the realty, but only in E.'s share of the proceeds in case of a sale during his lifetime.

In a suit in equity by a creditor to reach and apply in satisfaction of a debt due to the plaintiff from the principal defendant equitable assets of the principal defendant in the possession of a second defendant, where it is determined that the principal defendant owes the plaintiff as alleged, a decree, that a sale of the principal defendant's interest in the equitable assets be made and that from the proceeds there shall be paid among other items "taxable costs" to the second defendant, is not objectionable in failing to award to the second defendant costs "as between solicitor and client" since the determination of costs is a matter within the discretion of the presiding justice and nothing appears to show that such discretion was not exercised properly.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 30, 1907, to reach and apply in satisfaction of a debt alleged to be due to the plaintiff from the defendant Edward A. Bangs the interest of the debtor in property held in trust under the provisions of the sixteenth, seventeenth and eighteenth clauses of the will of his mother, Anne Outram Bangs.

The clauses of the will referred to were as follows:

"Sixteenth. To my sons Outram and Francis Reginald, two undivided thirds of all my real estate in Plymouth Woods and in Wareham, Massachusetts (except the Little Herring River Cranberry Bog) with all the privileges and appurtenances thereto belonging with all the furniture and other contents of the house and barn, and all the boats, live stock and other personal property of mine on said premises and the oyster grant.

"Seventeeth: To my son-in-law Robert H. Gardiner the other undivided third of all the property described in article Sixteenth of this will, but in trust for the following purposes: to hold and manage the same in common with the said Outram and Francis Reginald, and the net income from said one third to pay to my son Edward A. Bangs during his life, or to permit him to occupy and enjoy the use of said property in common with his brothers as he may prefer, and upon his death to convey and transfer said property to his said brothers, or the survivor of them, but should they predecease him, then to my heirs at law

in equal shares, the children of any deceased child of mine to take their parents share by right of representation.

"Eighteenth. 'The Little Herring River Cranberry Bog which has been reclaimed from a state of nature, managed, cultivated and rendered valuable, together with the cranberry house and barn thereon and used in connection therewith, I give to said Outram, but in trust for the following purposes : to hold, manage, improve and carry on as he may think best, and the net income thereof to appropriate to his own uses during his life; but upon his death said bog shall become the property of my sons and the survivors of them, in equal shares, the children of any deceased son, including Outram, to take their parent's share by right of representation."

The agreement mentioned in the opinion is set out in the fifth paragraph of the answer of the defendant Gardiner, trustee, which was as follows :

"Subsequent to the death of said Anne Outram Bangs all the persons of full age and in being, of whom said Edward A. Bangs was one, interested in the estate passing under the will of said Anne Outram Bangs, entered into an agreement, dated December 27, 1905, on good consideration, in regard to the settlement of the estate of said Anne Outram Bangs, and that by said agreement it was provided as follows : 'The life interest of Edward A. Bangs in the property held in trust for him under the seventeenth clause of said will shall remain so held in trust, but if at any time any of said properties shall be sold, the value of the life interest of said Edward A. Bangs in the proceeds shall be computed according to the combined experience tables, at four per cent, and shall be equally paid or applied by the said Edward A. Bangs or by the trustee named in said article of said will upon the notes referred to in the sixth clause of this agreement, or upon any other obligation mentioned in this agreement of said Edward A. Bangs, the choice to be in the discretion of the said trustee; or if the said trustee shall prefer he may invest the said Edward A. Bangs' share of such proceeds and pay or apply the income thereof during the life of the said Edward A. Bangs upon such notes.' "

Certain facts were agreed to, among which were the following: The estate devised under the sixteenth and seventeenth articles

of the will of Anne Outram Bangs consists of about three hundred acres in the town of Wareham, Massachusetts, mainly composed of marshy wild land, covered with scrub wood and entirely uncultivated. The estate borders on Buzzards Bay, however, and there is ample opportunity for the erection of summer dwelling houses overlooking the bay. On the estate is the house lately occupied by Anne Outram Bangs during the summer, with two barns and a greenhouse adjacent thereto, and several acres of cleared land. There were at the time of the death of Anne Outram Bangs four other houses on the property. One of them was in a dilapidated condition, and since the death of Anne Outram Bangs has been put in repair by her son Outram Bangs, and is now occupied by him. Another was at the time of her death, and now is, occupied by a farmer or caretaker on the estate. The other two houses are of small value, and a rent of $50 or $100 a year can at some times be obtained for them, but the sums so obtainable are insufficient to pay the cost of the repairs and taxes on the property. Such rents as have been received from these houses have been received by Francis Reginald Bangs, the owner of an undivided third interest in the estate.

The case was heard upon the bill and answers and the agreed statement of facts by *Hammond, J.*, who filed a memorandum for a decree, a portion of which was as follows:

" 1. As to the interest under the seventeenth item of the will:

" (a) I rule that the permission to the defendant Edward A. Bangs 'to occupy and enjoy the use of said property in common with his brothers as he may prefer' is personal to him, and does not authorize him to let to tenants. The distinction is not between a letting of the property by the trustees and a letting of it by him, but between an occupation of it by him and a letting of it by the trustees to some person other than him.

" (b) I rule that the agreement of December 27, 1905, is good against the plaintiff, although it has not been recorded.

" (c) Having so ruled, I rule that the plaintiff can reach the interest of the said Edward under this seventeenth item subject to (a) and (b) above mentioned."

A decree thereupon was entered, ordering a sale of the interest of Edward A. Bangs under the eighteenth clause of the will and

of his interest under the seventeenth clause as stated in the above memorandum, and continuing: " And it is ordered that the money raised by said sale shall be applied by said master as follows: first, to the payment of the costs and expenses of said sale; second, to the payment of the taxable costs to Outram Bangs, trustee, and to Robert H. Gardiner, trustee; third, to the payment to the plaintiff of " the debt claimed to be due. "Any balance then remaining in said master's hands shall be paid by him to the said defendant on demand."

All parties appealed from the decree, and the presiding justice at the request of the parties thereupon reported the case for determination by the full court.

*Roland Gray,* for the plaintiff.

*R. Homans,* (*F. H. Nesmith* with him,) for the defendants.

BRALEY, J. Upon proof of the debt, which does not appear to have been in dispute, the plaintiff was entitled to have applied in payment the vested interest of Edward A. Bangs in the contingent remainder devised to him by the eighteenth clause of the will of his mother, Anne Outram Bangs; and the interlocutory decree, so far as a sale was ordered of this portion of the debtor's estate, is not questioned by the defendants. R. L. c. 134, § 2. *Trumbull* v. *Trumbull,* 149 Mass. 200, 204.

The principal controversy has been confined to the construction of the seventeenth clause, and, when the nature and extent of the debtor's estate has been defined, to determine whether the plaintiff's rights of attachment are subject to the agreement that, upon a sale of his interest, the proceeds are to be applied to the payment of certain of his promissory notes held by members of the family.

By the seventeenth clause of the will he was given outright the net income for life of one third, or, at his election, he was to be permitted to occupy and enjoy the use of the estate in common with his brothers, who were seised of two undivided thirds in fee. The equitable life tenant's right to the income is absolute, but the alternative provision is not expressed so broadly. The gift is not of a general right of occupancy in land, which confers upon the devisee or beneficiary the power to occupy by a tenant. *Rabbeth* v. *Squire,* 19 Beav. 70; *S. C.* 4 DeG. & J. 406. But it is limited by the phrase " to permit

him to occupy and enjoy the use of said property." Upon reference to the character and use of the property, which is described generally in the sixteenth clause but more particularly in the agreed facts, very likely the testatrix had in mind a probability that, if she gave to him an alienable estate in the land, her other sons might be greatly annoyed in their enjoyment and management of the property by the intrusion of a stranger. But, however that may be, these words of limitation cannot be rejected, but must be accorded their ordinary meaning. *Towle* v. *Delano*, 144 Mass. 95, 99. When this is done, the right of occupation very plainly was not intended as merely an incident to a complete life estate, but only as an alternative privilege to be exercised at his option. This freedom of choice being purely personal is not assignable, and consequently cannot be taken on execution. But until exercised, the income did not cease, and the choice of occupation, when once made, is not irrevocable by the terms of the will. The legatee might change back again to income if he desired, and, if it were not for the agreement, the plaintiff, under an appropriate decree, then could reach and apply the entire income, whenever it accrued, in satisfaction of her debt.

While not denying the right of this defendant to alienate the income, the plaintiff claims that the agreement is in the nature of a conveyance of an equitable interest in real property, which, under the provisions of R. L. c. 127, § 4, and c. 147, § 3, not having been recorded and of which she had no notice, is not valid against attaching creditors. The answer, however, is that, as the agreement does not purport to convey any interest in the realty, but only in the proceeds if a sale takes place during his life, the rights of creditors claiming under the instrument are superior, and the plaintiff can hold only what, if anything, may remain after their demands are satisfied. *Putnam* v. *Story*, 132 Mass. 205, 211. *Hill* v. *Hill*, 196 Mass. 509, 516, 518.

But if the plaintiff fails to show that the decree was erroneous, the defendant trustees ask for a reversal of the part which gave to them only taxable costs, and that costs may be taxed as between solicitor and client. The suit is neither for instructions as to the construction of a will, even if that question is involved, nor a bill of interpleader to determine the title of claimants to a fund, nor for the benefit of all in the preservation of a fund

in which many persons have a common interest, where usually costs are taxed as between solicitor and client, to be paid out of the fund. *Davis* v. *Bay State League*, 158 Mass. 434, 435, and cases cited. But it is a creditor's bill analogous to the process of foreign attachment under which, by R. L. c. 189, § 67, the trustee recovers only taxable costs, "and such further amount for counsel fees and other necessary expenses as the court may allow." What sum, if any, should be allowed for such disbursements was discretionary with the single justice, and although the report presents all questions which were before him. we see no sufficient reason to differ from his conclusion.

*Decree affirmed.*