### In re JEANDROS DYE & PRINT WORKS, Inc.

### No. 60533.

District Court, D. Massachusetts.
Jan. 14, 1938.

Arthur E. Whittemore, of Boston, Mass., for National Silk Spinning Co.

Samuel Barnet, of New Bedford, Mass., for trustee in bankruptcy.

McLELLAN, District Judge.

The correctness of the "Referee's Finding and Order" entered November 1, 1937, is here involved. The referee's certificate and his finding and order filed therewith constitute the record on which the parties were heard.

The record discloses that the bankrupt's assets were sold free of liens, and that the proceeds are held subject to any valid liens. The National Silk Spinning Company, herein sometimes called the claimant, proved a claim for $33,137.50, and asserted that it held as security therefor two mortgages upon the bankrupt's machinery and equipment, one dated August 27, 1935, and the other dated December 31, 1935. The trustee objected to the allowance of the claim as a secured claim, urging that the mortgages were not valid incumbrances upon the property described therein. At the hearings before him, the referee intimated that the mortgage of August 27, 1935, was invalid. Thereupon, the claimant filed a petition with the referee, seeking the rescission of a discharge of a prior mortgage upon the same property held by the claimant, which discharge was given as a part of the same transaction as the alleged mortgage of August 27, 1935.

The referee having concluded that the mortgage of August 27, 1935, was invalid, and that the claimant is not entitled to a rescission of the discharge of the prior mortgage, these questions are presented for review.

Though it involves a slight repetition of what has been said, the following excerpt from the referee's certificate is here set forth, namely:

"On August 27, 1935, a mortgage of the equipment and machinery then located on the real estate of this claimant in New Bedford, was executed by Jeandros Dye & Print Works, Inc. by Jules Jeandros, President, and Frank J. Pericarpio, Secretary. The

mortgage was to secure the payment in accordance with their terms of four (4) promissory notes for Five Thousand (5,-000) Dollars each, all dated September 1, 1935, and payable in one, two, three and four years, respectively, from that date. On the date of the execution of the mortgage the only asset which it might be said the bankrupt had was the property included in the mortgage. On September 10, 1935, the day after the organization of the bankrupt corporation, it appeared that it had in addition to the property covered by the mortgage other machinery of the value of $2,550.00; a deposit of $5,000.00 with this claimant to secure the performance of the covenants of a lease; and $10,000.00 cash on deposit.

"The articles included in the mortgage had been the property of one Rappaport and were subject to a mortgage for twenty thousand (20,000) dollars to this claimant. Rappaport was adjudicated bankrupt in the New Jersey District. Claimant undertook to foreclose its mortgage by sale, and a sale was held at which the assets were bid in by representatives of the individuals who later organized this bankrupt corporation. A question arose as to the validity of the foreclosure sale and eventually the individuals mentioned negotiated for and purchased the property from the trustee in bankruptcy in New Jersey, subject to the claimant's mortgage. Negotiations had been had between the claimant and the purchaser with regard to the mortgage and with a view to permitting it to remain, and as a result of the negotiations, it was agreed that the claimant should take a new mortgage for the same amount as the existing mortgage with somewhat different terms of payment. Meanwhile, those who later were the incorporators of the bankrupt corporation had held meetings at which incorporation was discussed, and as a result it was determined to incorporate in Massachusetts, and the services of a Massachusetts attorney were retained to arrange for and complete the necessary steps for incorporation. The mortgage was executed, as stated, on August 27, 1935, and at that time Jeandros Dye & Print Works, Inc., this bankrupt, had no legal existence. Before the date of the execution of the mortgage, the attorney for the claimant inquired of the attorney for the incorporators if steps were being taken to incorporate, and he was assured that they were. The attorney for the incorporators communicated with his Massachusetts correspondent, and was assured that the necessary papers had all been drawn, and he so informed the attorney for this claimant. The attorney for the incorporators believed that sufficient had been done to constitute a 'de facto' corporation, and in that belief stated to the claimant's representative that a corporation existed on the date that the mortgage was executed. On September 9, 1935, the first meeting of the incorporators of the bankrupt was held in Boston at the office of an attorney and at that time the corporation was organized, the articles of organization and agreement of association were executed and submitted to the Secretary of the Commonwealth and the Commissioner of Corporations for approval, which was forthcoming on the same date. After the organization meeting the incorporators, as stockholders, officers and directors of the corporation continued in session and amongst other things discussed the mortgage here in question. There was oral testimony that there were votes of approval and adoption of the mortgage. There is no entry of such votes in the records of the corporation. Later, in setting up the books of the corporation the mortgage was entered therein as its obligation, and the machinery covered by it was entered as an asset. A payment of $2,500.00 was made at a later date by the bankrupt corporation to the claimant, which was applied as part payment of one of the notes secured by the mortgage in question. Extension of time for payment of said notes was granted by the claimant to the bankrupt corporation, in pursuance of a request by the latter by vote of the stockholders. Later a second mortgage, which I found to be duly authorized and valid, was given by the bankrupt to the claimant covering the same property, and that mortgage recited that it was subject to the mortgage dated August 27, 1935. From the date of the execution of the mortgage in question, it was regarded by the claimant and by the bankrupt corporation, and by all the parties concerned therewith, as a valid mortgage covering the property of the bankrupt. The mortgage was carried on the books of the bankrupt corporation as a liability, was included as such in all reports required by law to be made, and the bankrupt paid the interest reserved in it. There was oral testimony that at the annual meeting September 28, 1936, the stockholders voted approval of the acts of the directors in the preceding year. This vote was not recorded in the minutes

of the meeting. All the stockholders knew of the mortgage, considered it a corporate obligation and subscribed for and accepted their stock with that understanding.

"The bankrupt was adjudicated in April, 1937, and upon the filing of the proof of claim by the claimant upon the notes held by it, and alleging that they were secured by the two mortgages, the trustee objected to its allowance on the ground that the mortgages were not valid. Hearings were held and as a result there was an order entered that the mortgage of December 31, 1935, is a valid mortgage, and it was intimated that there would be an order entered that the mortgage of August 27, 1935, was not the mortgage of the bankrupt corporation, whereupon the claimant filed a petition in which it alleged in brief that as a part of the transaction covering the mortgage of August 27, 1935, and in consideration of that mortgage, it had discharged a valid mortgage which it held upon the property, and that said discharge was delivered by it under a mistake of fact which was mutual so far as the parties were concerned. The facts with regard to that are as stated above. Upon inquiry from him by a representative of the claimant, the attorney for the incorporators of the bankrupt, who was also an incorporator, received information from his correspondent in Massachusetts of steps taken, which he believed was sufficient to constitute the incorporators a 'de facto' corporation, and upon that belief he told claimant that they were incorporated. The representatives of the claimant acted upon his belief and statement."

The referee concluded that the mortgage of August 27, 1935, was not executed by the bankrupt corporation because that corporation was not in existence at that time; that it did not admit of adoption or ratification by the bankrupt after its incorporation; that because of the fact that the alleged mortgagor had been adjudicated bankrupt, and that the rights of the trustee in bankruptcy representing its creditors had intervened, the claimant was not entitled to the relief sought under its petition for rescission of the discharge of the prior mortgage.

■ The referee's conclusion as to the invalidity of the mortgage of August 27, 1935, and its not being subject to ratification, is abundantly supported by the authorities cited in his able and carefully prepared "Finding and Order." Mansfield v. Lang, Mass.,

200 N.E. 110; Abbott v. Hapgood, 150 Mass. 248, 22 N.E. 907, 5 L.R.A. 586, 15 Am.St.Rep. 193; Holyoke Envelope Company v. United States Envelope Company, 182 Mass. 171, 65 N.E. 54; Whiting & Sons Co. v. Barton, 204 Mass. 169, 90 N.E. 528; Pennell v. Lothrop, 191 Mass. 357, 77 N.E. 842; Penn Match Company v. Hapgood, 141 Mass. 145, 7 N.E. 22. See, also, Restatement of the Law of Agency, § 84(2), and cases cited in the Massachusetts Annotations thereto. If this were the only question presented for consideration, the order should be affirmed.

The next question concerns the claimant's petition for a rescission of its discharge of the prior mortgage and its right to have the lien of such prior mortgage attach to the proceeds of the sale by the trustee of the mortgaged property.

■ The claimant delivered a discharge of the prior mortgage as a part of the same transaction as that in which the invalid mortgage of August 27, 1935, purported to have been given. The parties to that transaction assumed a state of facts under which the new mortgage would have been effective. Such assumption involved a mutual mistake, the consideration for the discharge of the prior mortgage failed by reason of the invalidity of the new mortgage, and the claimant became entitled to the security of the prior mortgage. The referee's conclusion that "the claimant presents such a state of facts as would entitle it to relief if no other rights had intervened between the date of the discharge of the mortgage and the date of the filing of the petition" is amply warranted by the facts and the authorities to which he refers. At the hearing, no contrary view was argued by counsel for the trustee.

The final question is whether the trustee takes the bankrupt's property free from such right or equity as the claimant had.

■ Under the Bankruptcy Act, § 70, as amended, 11 U.S.C.A. § 110, the trustee is invested by operation of law with the title of the bankrupt as of the date it was adjudicated a bankrupt to property which prior to the filing of the petition it could by any means have transferred or which could have been levied upon or sold under judicial process, and under section 47a(2), as amended, 11 U.S.C.A. § 75(a) (2), the trustee, as to all property in the custody or coming into the custody of the bankruptcy court, is deemed vested with all the rights,

remedies, or powers of a creditor holding a lien by legal or equitable proceeding thereon. The referee says that a trustee, upon appointment, as of the date of adjudication, "acquires a lien on the property and is in the same position as a purchaser for value and attaching creditors." It is true that the trustee's position is that of an attaching creditor. Martin v. Commercial National Bank, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed. 441. But is he in the same position as a purchaser for value? If he is, the trustee takes free from the claimant's right to the security of the prior mortgage. Otherwise, the claimant has the status of a secured creditor as to the proceeds of the trustee's sale of the mortgaged property.

■ Inasmuch as I entertain a view different from that expressed by the referee and think that in this state an attaching creditor is not a purchaser for value, and that, so far as the facts here involved are concerned, he does not stand "in the same position as a purchaser for value," a brief discussion of the authorities on which the referee relies may not be amiss. They all relate to a situation where the defendant in the attachment proceedings has a record title. They are based fundamentally upon a statutory provision in substance that where a statute requires that an instrument be recorded, an unrecorded conveyance "shall not be valid as against any person except the grantor, * * * his heirs and devisees, and persons having actual notice of it, unless it, * * * is recorded." By way of illustration, see Hillside Co-Operative Bank v. Cavanaugh, 232 Mass. 157, 122 N.E. 187, 189, from which the referee quotes as follows: "In this commonwealth * * * 'An attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed.'" So, too, Waltham Co-Operative Bank v. Barry, 231 Mass. 270, 121 N.E. 71, 72, cited by the referee and stating that attaching creditors "are innocent purchasers for value," involved a record title, because the mortgage was upon real estate to which the statutory provision for recording a discharge thereof applies. Massachusetts General Laws (Ter.Ed.) c. 183, § 54. For other cases containing similar statements as to attaching creditors standing in the position of purchasers for value where the debtor's record title was involved, see American Soda Fountain Company v. Parsons, 1 Cir., 32 F.2d 737; Woodward v. Sartwell, 129 Mass. 210; Cowley v. McLaughlin, 141 Mass. 181, 4 N.E. 821; Whitney v. Window Screen Manufacturing Company, 187 Mass. 557, 73 N.E. 663; Brewster v. Weston, 235 Mass. 14, 126 N.E. 271; Ryder v. Brockton Savings Bank, 235 Mass. 476, 127 N.E. 234. See, also, Marshall v. Fisk, 6 Mass. 24, 4 Am.Dec. 76; Priest v. Rice, 1 Pick., Mass., 164, 11 Am.Dec. 156; Coffin v. Ray, 1 Metc., Mass., 212. In at least one of the above-cited cases it appears clearly that statements to the effect that an attaching creditor stands in the position of a purchaser for value are to be confined to cases where a record title is involved. In Cowley v. McLaughlin, supra, 141 Mass. 181, at page 182, 4 N.E. 821: Mr. Justice Holmes says: "When the registry shows a title subject to attachment, the attaching creditor, by a somewhat artificial view, is regarded in the light of a bona fide purchaser, to whom the recorded deeds have been exhibited, and to whom the conveyances over have not been disclosed. * * * But when the registry shows no title, and the creditor does not know that his debtor has one, which we must assume to have been the fact here, if it be in any way material, we think that he must take what accident throws into his net, as he finds it, and that he cannot claim the benefit of a fiction to get more than his debtor really owned."

See, also, Stoneham Five Cents Savings Bank v. Johnson, Mass., 3 N.E.2d 730, citing Cowley v. McLaughlin, supra, and containing language consistent therewith.

Counsel for the trustee, citing Jeselsohn v. Park Trust Company, 241 Mass. 388, 135 N.E. 315, states in his brief that this case does not involve a record title. This is unimportant, because it involves, not the rights of an attaching creditor, but of real purchasers for value.

■ In the case at bar, no recording acts are involved. When the bankruptcy proceedings were commenced and when the trustee in bankruptcy acquired the rights of an attaching creditor, the claimant's prior mortgage was duly recorded in accordance with the statute, Massachusetts General Laws (Ter.Ed.) c. 255, § 1, and the bankrupt had no record title. Though the claimant's discharge of its prior mortgage was recorded, this was without effect upon the rights of the parties, because there was no provision for recording the discharge of

a personal property mortgage. See Frost v. George, 181 Mass. 271, 272, 63 N.E. 888; Pitcher v. Barrows, 17 Pick., Mass., 361, 28 Am.Dec. 306; Bigelow v. Smith, 2 Allen, Mass., 264.

In his book on Sales, § 620, Mr. Williston, after preferring the cases which hold that a creditor who discharges his claim in exchange for a conveyance is a purchaser for value (see Smith v. Knapp, Mass., 9 N.E.2d 399, so holding), and possibly indicating his preference for the minority view that a creditor who accepts a conveyance as security is a purchaser for value (see Goodwin v. Massachusetts Loan & Trust Company, 152 Mass. 189, 25 N.E. 100, contra), says:

"An attaching creditor is to be distinguished from a creditor to whom the debtor has given property for security, since an attachment is in invitum and gives no greater rights in the attached property than the debtor himself had. It must be observed, however, that where the defect in the title of the property is due to fraud against creditors, this rule does not apply. For the same reason that an attaching creditor is not a purchaser for value, an assignee or trustee in bankruptcy or under a general assignment for the benefit of creditors is not a purchaser for value, nor is a receiver."

■ In this commonwealth, an attaching creditor is not a purchaser for value. Nor, except so far as the recording acts are concerned, does he stand in the position of such a purchaser. In Thaxter v. Foster, 153 Mass. 151, 26 N.E. 434, 435, the court, holding that where the delivery of goods with the intention of passing title is induced by fraud, the seller may rescind the transaction and recover the goods notwithstanding their attachment in an action against the purchaser, said:

"In the sale and delivery of merchandise procured by fraud, it is generally the intention of the parties that the title pass to the vendee, but because of the fraud, the vendor can, if he chooses, on discovering the fraud, avoid the sale and delivery, notwithstanding this intention, because in the whole transaction he has been deceived by the vendee. * * *

"The defendant, as attaching creditor, was not a purchaser for value."

In McAuliffe & Burke Company v. Gallagher, 258 Mass. 215, 154 N.E. 755, the court decides that a creditor, attaching property for a pre-existing debt, is not a purchaser for value. The following cases also support the view that an attaching creditor is not a purchaser for value of personal property. Buffington v. Gerrish, 15 Mass. 156, 8 Am.Dec. 97; Wiggin v. Day, 9 Gray, Mass., 97; Atwood v. Dearborn, 1 Allen, Mass., 483, 79 Am.Dec. 755; Kline v. Baker, 99 Mass. 253; Cashman v. Bangs, 200 Mass. 498, 86 N.E. 932. See section 308 of the Massachusetts Annotations of the Restatement of the Law of Trusts; Thayer v. Daniels, 113 Mass. 129; and Bussing v. Rice, 2 Cush., Mass., 48.

■ The referee dismisses the authorities which involve a right of rescission for fraud upon the ground that "in the case of goods obtained by fraud, no title passes to the grantee." I think it is only in the unusual case that a sale of goods induced by fraud is void. All depends upon the nature of the fraud. See Edmunds v. Merchants' Despatch Transportation Company, 135 Mass. 283; Robertson v. Coleman, 141 Mass. 231, 4 N.E. 619, 55 Am.Rep. 471. As a general rule, title passes to the fraudulent vendee, subject to rescission by the vendor. Notwithstanding any earlier authorities like Buffington v. Gerrish, supra, indicating possibly that an attempted sale of personal property induced by fraud passes no title, the later cases holding that a bona fide purchaser for value acquires an indefeasible right to the property indicate that in Massachusetts all the original seller has is a right to rescind the transaction for fraud or to maintain an action at law for damages caused by the fraud.

■ It so happens that the foregoing cases all involve an equity or right of rescission for fraud. If, as is not the case, the fraud there appearing prevented the transfer of title, these authorities might not be determinative. But they are not the only cases which point the way for the claimant. At common law and in this commonwealth, an ordinary chose in action is assignable only in equity. The assignee's rights or equities are not subject to a subsequent attachment thereof as the property of the assignor. As stated in Norton v. Piscataqua Insurance Company, 111 Mass. 532, at page 535:

"It has long been settled that if a note of hand is transferred by delivery, bona fide and for a valuable consideration, this is a valid assignment in equity which the courts of law will regard and protect, although the assignee cannot maintain an action at law

thereon in his own name. And the same principle applies to other choses in action. * * *

"It is no longer open to question that a delivery of notes like that described in the present case, * * * would operate as an equitable assignment. * * * The attaching credtior * * * could not stand upon a better footing than the debtor whose funds he attached. If the corporation [the assignor] had no equitable interest in the chose in action intended to be attached, Norton could acquire none by his attachment. Dix v. Cobb, 4 Mass. 508."

See, also, O'Gasapian v. Danielson, 284 Mass. 27, 187 N.E. 107, 89 A.L.R. 1159.

It is true that no Massachusetts cases have been called to my attention, and that I have found none, directly involving the effect of an attachment upon an equity growing out of a right of rescission for mistake, as opposed to fraud. The principle is the same in either case, and it is unnecessary to consider authorities in other jurisdictions showing this.

The conclusion is that the referee's order must be reversed, and the matter remanded to him for proceedings not inconsistent herewith.