THOMAS CASSIDY *vs.* CHARLESTOWN FIVE CENTS SAVINGS BANK.

Suffolk. March 26, 1889. — May 14, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Deed — Title — Extrinsic Evidence.*

A deed of land contained in its granting part a clear and exact description, by metes and bounds, of a lot adjoining that of the grantors, followed by the clause, "being the same premises formerly conveyed by grantors to O. W. M. by deed dated September 1, 1868, and recorded with S. Deeds, book 937, page 183," which deed correctly described the land intended to be conveyed. *Held,* that the grantee did not acquire a good title to the grantors' land.

BILL IN EQUITY, filed July 9, 1888, to recover a portion of purchase money paid in cash for land, and to enjoin the negotiation or collection of a mortgage note given for the balance. The case was heard by *Devens,* J., who reported it for the consideration of the full court, in substance as follows.

Joseph H. Locke and one Colesworthy were seised in fee simple of adjoining lots of land, of equal size, running from Cherry Street to Chestnut Street in Chelsea, and numbered respectively 24 and 26 on a plan of the lands of the Winnisimmet Company. Locke applied to the defendant bank for a loan to be secured by a mortgage of his land, and upon the recommendation of its investment committee, which examined the land, the defendant made the loan to Locke, who thereupon executed the mortgage. The mortgage deed, which was dated March 15, 1875, recited that Locke and his wife, in consideration of the loan by the defendant corporation, " the receipt whereof is hereby acknowledged, do hereby give, grant, bargain, sell, and convey unto the said corporation, its successors and assigns, a certain parcel of land, with the buildings thereon, situate in Chelsea in said county, and bounded and described as follows, viz." Here followed an accurate description by metes and bounds of lot No. 26, owned by Colesworthy. " Containing three thousand six hundred square feet, being the same premises formerly conveyed by grantors to Otis W. Merriam by deed dated September 1, 1868, and recorded with Suffolk Deeds, book 937, page 183." The deed referred to correctly described the land which Locke intended to convey to the bank.

On February 5, 1881, the bank made an entry upon the land owned by Locke, to foreclose the mortgage for breach of the condition thereof, and on April 3, 1883, sold the land under a power of sale in the mortgage to a third person, who reconveyed it to the bank on April 17, 1883, both deeds containing the same erroneous description found in the mortgage deed from Locke to the bank. Subsequently, on June 5, 1888, the defendant, in ignorance of the false description in the deeds, executed a quitclaim deed to the plaintiff, which was intended to be a conveyance to him of that half of the Locke estate bounding on Chestnut Street, but which in fact described the corresponding half of the Colesworthy lot, the plaintiff paying therefor two

hundred and fifty dollars in cash, and giving a promissory note for twenty-two hundred and fifty dollars, secured by a mortgage back of the land.

If upon these facts the defendant did not acquire title to the Locke estate, it was agreed that the bank was to pay over to the plaintiff two hundred and fifty dollars, and be perpetually enjoined against negotiating the note given for the balance of the purchase money; otherwise, the bill was to be dismissed.

*W. H. Hart*, for the plaintiff.

*S. T. Harris*, for the defendant.

MORTON, C. J.    The only question presented to us is whether the deed of mortgage from Locke to the defendant bank conveyed a good title of the Locke estate to the bank.    At the date of the deed, Locke owned a lot of land on Chestnut Street in Chelsea.    One Colesworthy owned the adjoining lot.    The description in the granting part of the deed of Locke is an exact description, by metes and bounds, of the Colesworthy lot; it cannot apply to any other lot.    At the end of the description is the following clause: " Being the same premises formerly conveyed by grantors to Otis W. Merriam by deed dated September 1, 1868, and recorded with Suffolk Deeds, book 937, page 183."    The deed to Merriam referred to correctly describes the Locke estate.    If we could resort to external evidence, it might appear that Locke's intention was to convey the lot owned by him.    But we must look for the intent in the deed itself, and if the terms of the deed do not express the intent, it must fail. The description in the granting part of the deed is explicit and unambiguous, and imports an intention to convey the Colesworthy lot.    The words descriptive of the estate intended to be conveyed are wholly without ambiguity.    The subsequent clause, referring to the deed to Merriam, does not create any ambiguity in the prior description, but is repugnant to it.    This clause was not inserted for the purpose of describing the lot conveyed.

Where, as in this case, the deed conveys one estate by a particular description, such description must prevail over a subsequent general reference to a prior deed made for another purpose, and such reference must be rejected.    See *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15.

The defendant is not without a remedy.    It could by a suit in

equity compel Locke to reform the deed, so as to give it a title to the lot which was in fact intended to be conveyed; but upon the deed as it stands, we are of opinion that it has not a good title in law which it can convey to the plaintiff. The plaintiff is therefore entitled to a decree according to the terms of the report.          *Decree for the plaintiff.*