HILLSIDE CO-OPERATIVE BANK *vs.* CLARENCE W. CAVANAUGH, trustee in bankruptcy, & others.

Middlesex.  December 5, 18, 1918. — February 26, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Equity Jurisdiction,* To reform deed, Mistake, *Bona fide* purchaser. *Attachment.*

Where both parties to a mortgage deed, by reason of a mutual mistake honestly made, supposed that a lot of land, purporting to be conveyed by the deed and described in the deed was the lot of a certain number on a certain recorded plan, to which the mortgagor had a good title, whereas the lot described was not the lot thus numbered on the plan but was one to which the mortgagor had not a good title, the mortgagee, who lent money to the mortgagor upon the mortgage, may maintain a suit in equity against the mortgagor to compel him to reform the mortgage deed so as to give the mortgagee a title to the lot which was intended in fact to be conveyed.

In such a suit in equity it appeared that before the filing of the bill two special attachments had been placed upon the land intended to be conveyed, and it was *held* that the attaching creditors stood in the position of *bona fide* purchasers for value without notice and that the decree should provide that the reformed deed should be made subject to the liens of their attachments.

BILL IN EQUITY, filed in the Superior Court on November 2, 1918, by the Hillside Co-operative Bank, a corporation having a usual place of business at Medford, against Mary E. Robertson and her trustee in bankruptcy and others, to reform a certain mortgage deed given by the defendant Robertson to the plaintiff, so that it might be a valid incumbrance on lot Number 8 shown on a plan made by W. A. Mason dated April, 1863, and recorded

with the Middlesex South District Deeds in Book of Plans 11, Plan 19.

The case was heard by *Fox*, J., who reported it for determination by this court with his findings of fact which are stated in the opinion. The judge concluded his report as follows: "The case was tried before me in the Superior Court, and upon the foregoing facts, all of the evidence being documentary except the testimony of Mr. Sleeper [the plaintiff's title examiner], I find that the original grantor intended to convey Lot 8 and not Lot 7; that subsequent grantors have perpetuated the same mistake; that the only identifying mark upon the ground was Olmstead's adjoining house lot; and that this case was one of mutual mistake and the plaintiff was entitled to reformation of its mortgage deed, and to hold it against the trustee in bankruptcy representing both the general and the attaching creditors." At the request of the defendant trustee in bankruptcy, the judge reported the case for determination by this court. It was agreed that, if the plaintiff was not entitled to reformation of its mortgage, a decree was to be entered dismissing the bill with costs. If the plaintiff was entitled to reformation of its mortgage, but subject to the liens of the attaching creditors, a decree was to be entered that the mortgage be reformed subject to the liens, to be preserved by the defendant trustee in bankruptcy in such sums as should be determined hereafter, and without costs to either party. If the plaintiff was entitled to reformation of its mortgage and the liens of the attaching creditors were subordinate to this mortgage, a decree was to be entered for the reformation of the mortgage with costs.

*A. E. Lewis & F. W. Sleeper,* for the plaintiff, submitted a brief.

*J. T. Pugh,* (*W. A. Kneeland* with him,) for the defendant Cavanaugh.

PIERCE, J. In April, 1915, the defendant Robertson, hereinafter called the defendant, negotiated with one Langley for the conveyance to her of a lot of land, the title to which was in Langley by reason of his and his predecessors' continuous and uninterrupted adverse possession under a claim of title since July 1, 1867. *Wishart* v. *McKnight,* 178 Mass. 356. The lot in question is Lot 8 on a plan of lots duly recorded as owned by Z. L. Raymond and others, was occupied by Langley, and was known as 68 Dana

Street, Cambridge. Before the negotiations were concluded by a final agreement, the defendant made an application to the plaintiff for a loan. She procured from the plaintiff an application blank. This blank she returned to the plaintiff filled in, signed by her and dated April 14, 1915. "The application contains after the printed words 'Location of Property' the words in ink, ' 68 Dana Street, Cambridge,' and this is the only reference or description of the property contained therein." Meanwhile, on April 13, 1915, the plaintiff "voted to make her a loan of $2,400 subject to the favorable report of its security committee."

The plaintiff's title examiner, who was also its treasurer, examined the title. He had examined the title for Langley and had assumed then, as he did on the application of the defendant, that Lot 8, which was occupied by Langley and was known as 68 Dana Street, was Lot 7 on the plan above referred to. On this assumption he signed the "Certificate of Attorney" on the application as follows: "The title to the within described estate is satisfactory." He testified "that if he had supposed that 68 Dana Street and Lot 8 were the same he would not have accepted the title; . . . that it was not the custom of his bank to take mortgages on titles by adverse possession; [and] that the plaintiff's bank would not have made the loan if he had not found the record title satisfactory."

The history of the title of Langley and of his predecessors in occupation of Lot 8 under a claim of ownership, concisely stated is as follows: On July 1, 1867, Raymond, then owning all the lots on the recorded plan except Lot 9, conveyed by deed to one Flagg a lot which had the bounderies of and was described as lot "Seven" on a plan of land in Cambridge owned by Z. L. Raymond and others. Flagg entered into possession of Lot 8 on said plan. In 1870 Flagg gave a deed to one Steele, which deed followed the same description as that contained in Raymond's deed to Flagg. This same description was repeated in each successive mesne conveyance down to a deed in January, 1900, to one Charlotte E. Fuller. Each of the successive grantees under Flagg occupied Lot 8 which from 1873 was known as 68 Dana Street, although not described by street number in any deed; and their claim to Lot 8 has never been disputed. Fuller and her heirs occupied Lot 8 until August 3, 1910, when her heirs gave a deed

to Langley which followed the description of Lot 7 in the preceding deeds, and then added: "Or however otherwise said premises may be bounded or described and be all or any of said measurements more or less. Being the premises conveyed to our late mother, Charlotte E. Fuller, by Thomas Leighton, Junior, by deed dated January 1, 1900, recorded with Middlesex So. Dist. Deeds, lib 2795, page 246, our title being derived as the heirs at law of our said late mother who died in said Cambridge, December, 1902, intestate."

Langley entered into possession and occupied Lot 8 until April 27, 1915, the day he delivered his deed to the defendant with the description contained in the deed of Fuller to Langley. On the same day the examiner of titles prepared the mortgage deed, following the description in the deed of Langley to the defendant; the defendant executed it and the plaintiff paid the defendant $2,400.

Upon the foregoing undisputed facts it is plain that the plaintiff and the defendant were in agreement upon the subject matter of their negotiations. The defendant sought to obtain a loan upon the security of a mortgage upon real estate in the occupation of Langley. The plaintiff undertook to make the loan upon the security of that mortgage when Langley should by his conveyance enable the defendant to execute the mortgage deed. The plaintiff and the defendant both understood that Langley had a record title to the lot and that the deed of Langley to the defendant transferred that title.

It turns out that they were mutually mistaken in both suppositions, as the deeds to Langley and his predecessors in occupation and the deed of Langley to the defendant conveyed no title to Lot 8. *Cassidy* v. *Charlestown Five Cents Savings Bank,* 149 Mass. 325. In a word, their mutual mistake does not concern the subject matter of their agreement but relates to the origin of the title to the lot which the defendant undoubtedly held in fee. In these circumstances equity will compel the defendant to reform the deed so as to give the plaintiff a title to the lot which was in fact intended to be conveyed. *Cassidy* v. *Charlestown Five Cents Savings Bank, supra. J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212.

The defendant entered upon and occupied the premises on

April 27, 1915.  "On various dates from March 24, 1916, to July 21, 1916, general attachments were filed in the registry at East Cambridge against all the real estate of Mrs. Robertson in the County of Middlesex.  On July 21, 1916, two special attachments were made on the property of said Robertson, the title of which was in the name of Zebina L. Raymond.  On November 22, 1916, she was adjudicated bankrupt upon an involuntary petition filed July 22, 1916.  The defendant Cavanaugh is trustee in bankruptcy of her estate.  By order of the court in bankruptcy, dated May 16, 1918, upon a petition filed without notice to creditors, the trustee was authorized to preserve for the benefit of the bankrupt estate the liens of the attaching creditors.  The amount due, if any, upon, and the validity of these attachments, is to be determined hereafter, if it becomes material."  The bill was filed November 2, 1918.

It is the settled rule that the decree of reformation takes effect from and relates back to the day of the first execution of the reformed instrument, except as to purchasers for value without notice and those standing in similar relations.  It is contended that attachment creditors cannot stand in the relation of *bona fide* purchasers for value without notice.  However the law may be elsewhere it is settled in this Commonwealth that "An attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed."  *Woodward* v. *Sartwell,* 129 Mass. 210, 212.  *Hughes* v. *Williams,* 218 Mass. 448.

It follows in accordance with the terms of the report that a decree is to be entered that the mortgage be reformed, subject to the liens preserved by the defendant trustee in such sum as is determined hereafter, and without costs to either party.

*Decree accordingly.*