# GASTON ELECTRIC CO.
## v.
## AMERICAN CONSTRUCTION CO., INC.
### and
## NATIONAL SHAWMUT BANK, TRUSTEE

(November 30, 1956 — January 23, 1957)

*Adlow, C. J.* Action of contract to recover $4,498.00 for work, labor and materials furnished by the Gaston Electric Company to the American Construction Co., Inc. The National Shawmut Bank was named as trustee in the writ which was served on March 12, 1954. On this day it had in its hands funds of the defendant in the amount of $512.77. Over two months after the commencement of this action notices of Federal tax liens on the property of the defendant were filed in appropriate registries and recording offices. On September 23, 1954 an involuntary petition in bankruptcy was filed against the defendant, and a trustee in bankruptcy was appointed. On October 29, 1954 the trustee in bankruptcy filed a suggestion of bankruptcy in the above entitled cause and requested the court to stay the proceedings.

On May 5, 1955 the United States filed a petition to intervene in this action alleging that the defendant was indebted to the United States for delinquent taxes in the amount of $3,496.56. At the hearing on this petition, held on June 11, 1956, the United States moved to amend its original petition by adding a further claim for delinquent taxes in the amount of $1,024.85. Prior to this hearing the trustee in bankruptcy had paid the amount claimed in the original petition to intervene, and the claim of the United States now involves only the amount represented by the amended petition of June 11, 1956.

The facts were not in dispute. At the close of the hearing the court ruled that the United States was entitled to the fund under attachment. While the court refused to pass on the requests filed by the plaintiff on the ground that they were "mingled requests for findings of fact and rulings of law" the clear-cut issue raised by the undisputed facts brings this cause here as a "case stated," and we propose to deal with it as such. *Frati v. Jannini,* 226 Mass. 430, 431.

The issue involves the conflicting claims of an attaching creditor and of the United States with respect to the fund under attachment. While the United States concededly has a lien for unpaid taxes on the property and rights to the property of a taxpayer (Internal Revenue Code, §3670), the lien is not valid against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector. (Internal Revenue Code, §3672).

It is undisputed that the funds involved were attached at least two months before any notice of lien was filed. This fact is immaterial unless the attaching creditor can show that he is one of the group protected by the provisions of §3672 of the Internal Revenue Code. In other words, the burden is on the attaching creditor to show that he is either a

mortgagee, a pledgee, a purchaser, or a judgment creditor if he is to benefit by the precedence of his attachment over the recording of the tax lien.

It has been determined that one standing in the shoes of the plaintiff is not a judgment creditor. *U.S. v. Security Tr. & Sav. Bank*, 340 U.S. 47. It is equally clear that the decision of our Federal courts deny the attaching creditor the character of a purchaser. *U.S. v. Hawkins*, 228 Fed. 2d 517. Although the courts of this Commonwealth have, on occasion, conferred on an attaching creditor the character of a purchaser for value, *Hillside Coop. Bank v. Cavanagh*, 232 Mass. 157, the description has been branded as a "somewhat artificial view" by one of our outstanding jurists. Holmes, J. in *Cowley v. McLaughlin*, 141 Mass. 181, 182.

To determine the true character of the attaching creditor we must view the situation realistically. If the attaching creditor has accomplished anything by bringing his writ and attaching the funds of his debtor it is that he has become secured for his debt to the extent of the fund attached. Chief Justice Shaw described an attachment as "a specific charge on property for the security of the debt sued for". *Davenport v. Tilton*, 10 Met. 320, 327. In this sense the fund under attachment enjoys the same status as a pledge or property held under a mortgage. In any of these situations the holder may be divested of his security by the payment of the debt, but until this happens his right to the security is unquestioned.

In this case the attachment of the taxpayer's fund was made more than four months before the filing of the petition in bankruptcy. Hence the fund could not be claimed by the trustee in bankruptcy. U. S. Code, §107 (a) (1) 1952 Ed. It is difficult to understand how the United States could acquire a greater right to the fund than the trustee charged with the duty of gathering in all the assets of the bankrupt. Nor was the situation in any way affected

by the fact that a suggestion of bankruptcy had been filed with the court. This in no manner prevented the creditor from concluding the litigation and getting a special judgment enabling him to charge the trustee on its answer. G. L. c. 235, §24.

Since the earliest adjudications on issues involving the right of the United States to priority in satisfying claims for taxes it has been clearly stated that the right did not extend to property already divested from the debtor. *Thelusson v. Smith*, 2 Wheaton, (US) 396, 423. Such is the status of the fund with which we are concerned. It is beyond the reach of the trustee in bankruptcy of the delinquent taxpayer. How can the United States claim a greater right to it? *U.S. v. Winnett*, 165 Fed. 2d 149. Should the issue of the litigation turn out adversely to the attaching creditor the trustee in bankruptcy would become entitled to the fund and the United States could then assert its priority to the estate of which it became a part. Until this happens, however, the fund is burdened by an attachment that places it beyond the reach of the taxpayer or those who claim through him. In simplest terms, the United States can reach nothing that the trustee in bankruptcy could not have reached. *Karno-Smith Co. v. Maloney*, 112 Fed. 2d 690; *Board of Supervisors v. Hart*, 26 So. 2d 361 (La); *U.S. v. Yates*, 204 SW 2d 399.

Under the provisions of §3710 (a) of the Internal Revenue Code "Any person in possession of property or rights to property subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process". If we are to give meaning and effect to the words of this section then "funds under attachment" are to be distinguished from property or rights to property

ordinarily subjected to the government's lien. If the collector is enjoined from seizing such funds, it is because Congress desired to give the attaching creditor an opportunity to prove that his attachment was legal and valid and not made in fraud of creditors. In other words, it was the intention of Congress to allow the creditor who had made a timely attachment to have the benefit of it. Otherwise what justification would there be for that provision of the law which limits the rights of the collector with respect to funds under attachment?

In view of the above considerations the order of the court allowing the intervening petition of the United States as amended is vacated, and the finding must be

*Intervening petition disallowed.*

Zonderman & Glanz of Boston for the plaintiffs

Robert J. Hoffman, Assistant U.S. Attorney for the United States as Intervenor,