CASEY vs. PAPAMECHAIL, MISC 18-000620

































 
 CARLA CASEY, Plaintiff, v. PAMELA PAPAMECHAIL; MARYLOU SUDDERS, SECRETARY OF THE MASSACHUSETTS EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES; and OFFICE OF MEDICAID/MASSHEALTH THIRD PARTY RECOVERY UNIT, Defendants
 MISC 18-000620 
 JUNE 1, 2021
ESSEX, ss.
PIPER, J.
DECISION














 This case involves real property held of record by an individual at the time of her death. The court has been asked to reform a deed executed fifteen years before the individual died which conveyed away the remainder interest in the property, leaving only a life estate title in the decedent, on grounds of a mutual mistake in that deed's execution. The flawed deed described the wrong property. The court must decide if reformation of that deed in the manner requested would impair a claim under G. L. c. 118E, § 31 for the recovery from the deceased's estate of funds advanced for her medical care, and, if so, whether the court ought to allow reformation. 





 Plaintiff Carla Casey has filed a motion for summary judgment pursuant to Mass. R. Civ. P. 56 seeking reformation nunc pro tunc of a defective deed which purported to transfer title to the residential property located at 19 Hingston Street, Peabody, Massachusetts (the "Property") from her now-deceased mother to her, and seeking to quiet title to the Property. Marylou Sudders, Secretary of the Massachusetts Executive Office of Health and Human Services ("MassHealth") [Note 1] claims the right to recover from the property of the estate, including the Property, the value of medical expenses paid from public funds with respect to the plaintiff's mother's care, and contends that a nunc pro tunc reformation would prejudice MassHealth's ability to do that, by depriving the estate of its primary asset; MassHealth has filed a cross motion for summary judgment, seeking to preserve its legal interest in the Property. 





 Having heard the arguments of counsel, reviewed the record before me, and given every reasonable inference to the party opposing summary judgment, there being no issues of material fact requiring trial, I decide that judgment ought to enter as a matter of law. The court DENIES plaintiff's motion for summary judgment and GRANTS summary judgment in favor of MassHealth. 





I. PROCEDURAL HISTORY 





 Plaintiff filed this complaint on November 20, 2018, seeking to reform nunc pro tunc the deed claimed to have been executed in error, and to quiet title to the Property. Plaintiff and defendant filed a Joint Statement on January 4, 2019, and on January 8, 2018, MassHealth filed its Answer, Counterclaims, and Crossclaims arguing that, under 42 USC § 1396p(b)(1) and G. L. c. 118, § 31(d), MassHealth is entitled to recover at the time of any sale or transfer of the Property the value of the benefits MassHealth provided. Plaintiff filed her answer to MassHealth's counterclaims on January 30, 2019. 





 On March 20, 2019, the parties filed a Joint Motion requesting that the court issue an order empowering plaintiff to sell the Property and place the disputed funds in escrow pending the outcome of this suit. On April 12, 2019, the court issued an Interim Order adopting the terms proposed by the parties. On April 19, 2019, the parties filed a Joint Report on discovery and dates for filing dispositive motions, and on May 15, 2019, plaintiff filed a Motion for Summary Judgment. At some point thereafter, plaintiff sold the property and placed the value of the benefits in escrow. 





 On June 18, 2019, after the Property had been sold, MassHealth filed an Amended Answer, Counterclaim, and Crossclaim [Note 2] as well as an Opposition to Summary Judgment and a Motion for Summary Judgment against plaintiff requesting that the court either order the property to be an asset of the estate, order the escrowed funds to be paid to MassHealth, or if the court did reform the deed, declare that MassHealth's claim to payment continues to maintain its existence and priority after reformation. On July 15, 2019, plaintiff filed her Answer to the Amended Counterclaims and on July 18, 2019, she filed her Opposition to Defendant's Motion for Summary Judgment. This court then held a hearing on the cross motions for summary judgment at which Attorneys Michael Cabral and Marc Frey appeared for plaintiff and Attorneys Sharon Boyle, Paul O'Neill, Ingrid Schroffner, and Charles Sheehan appeared for defendant. 





II. STANDARD OF REVIEW 





 Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and responses to requests for admissions. . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56(c), as amended, 436 Mass. 1404 (2002). See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316 , 325-326 (2012). The moving party must affirmatively show there are no triable issues of fact and that the moving party is as a legal matter entitled to an entry of summary judgment in its favor. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638 , 644 (2002). All evidentiary inferences must be resolved in favor of the non moving party. Simplex Techs, Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196 , 197 (1999). If the movant meets its initial burden of proof, the burden shifts to the non-movant to show the existence of disputed facts, which it cannot accomplish solely with "vague and general allegations of expected proof." Community Nat'l Bank v. Dawes, 369 Mass. 550 , 554. See Ng Bros. Constr., Inc., 436 Mass. at 648 (finding conclusory factual assertions insufficient to defeat summary judgment). The contributions to the record by both parties reveal no disputes as to any facts which are material, and the case may be decided on legal issues alone, making summary judgment proper. 





III. UNDISPUTED FACTS 





 1. Pursuant to a deed dated September 14, 1967 and recorded on the same date in the Essex County (South District) Registry of Deeds ("Registry") at Book 5475, Page 429, plaintiff's mother, Mary Papamechail, acquired title to the residential property located at 19 Hingston Street, Peabody, Massachusetts. [Note 3] 





 2. On November 16, 1989, Papamechail turned 65 and thus became eligible to receive recoverable Medicaid benefits through MassHealth. [Note 4] 





 3. Papamechail received MassHealth benefits for medical care between July 8, 1998 and her death in 2018 totaling $176,499.79. [Note 5] 





 4. Under G. L. c. 118E, § 31(b), MassHealth is entitled to recover from a member's estate the value of benefits provided to a member aged 65 or older as of April 1, 1995. 





 5. Papamechail executed a deed on March 13, 2003, recorded with the Registry at Book 20355, Page 265, attempting to convey a remainder interest in the Property to plaintiff and reserving a life estate to the grantor, plaintiff's mother, Mary Papamechail. [Note 6] 





 6. The March 13, 2003 deed, however, described not the Property, but another, incorrect parcel of land, namely, a separate parcel over which Papamechail held a mortgage. [Note 7] This deed was intended by the parties to it to describe the Property, but erroneously described a distinct property unrelated to the Property. 





 7. The reason this deed describes the incorrect parcel was a scrivener's error. The error only was uncovered after Papamechail's death. [Note 8] 





 8. Due to this error, the March 13, 2003 deed did not effect a legal record transfer of any interest in the Property to plaintiff, and Mary Papamechail remained the record fee owner of the Property at the time of her death. [Note 9] 





 9. Papamechail died on August 12, 2018 and is survived by her two daughters. [Note 10] 





 10. In her will, Papamechail bequeathed the residue of her estate to her daughters in equal shares. [Note 11] 





IV. DISCUSSION 





 Reformation of deeds generally is proper where (1) both parties had an identical intention as to the terms of the deed; (2) the deed is materially at variance with that intention; and (3) no innocent third parties will be unfairly affected by the reformation. See Franz v. Franz, 308 Mass. 262 , 266 (1941). There is no dispute here that there was a clear scrivener's error in the 2003 deed, that the parties to the deed did not intend to convey the property actually described (which Papamechail did not actually own), and that the attempted conveyance failed as a result. 





 Despite agreement as the existence of an error in the 2003 deed, MassHealth opposes reformation. First, MassHealth disputes that the property which the parties actually did intend to transfer was, in fact, the Property at 19 Hingston Street. MassHealth's argument on this point is limited to claiming that it is simply impossible to prove the true intention of the deed's now deceased grantor, Papamechail. This is simply not the case. The affidavits in the record of both the deed's grantee and the attorney who facilitated the transaction attest on personal knowledge to precisely that the intention, all around, was the conveyance of the remainder interest in Papamechail's residence, the Property which she owned in fee; these unrefuted attestations are more than sufficient to show, without material dispute, that all parties to the 2003 deed intended its subject to be the Property, 19 Hingston Street. MassHealth offers no evidentiary support of its own in response that might create a legitimate dispute of fact, and it is well settled that "the opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207 , 209 (1989). "The omission of a specific denial or contradiction particularly grounded in the summary judgment record results in an effective admission." Poon v. Massachusetts Inst. of Tech., 74 Mass. App. Ct. 185 , 193 n.7 (2009). 





 This brings the court to its consideration of the third element of the test and the subject on which the parties have expended the majority of their efforts: though reformation is a potential remedy where a mutual mistake is clear, it may be unavailable where the reformation would unfairly interfere with the rights of an innocent third party. Id. The principal question raised by the summary judgment motions, then, is whether or not reforming the 2003 deed nunc pro tunc, treating the Property as if it had been conveyed effectively at the time the flawed deed went to record in 2003, would unfairly affect MassHealth's rights. 





 The necessary first step in this analysis is understanding the nature and scope of MassHealth's claimed interest in the Property. "[I]n certain circumstances, MassHealth may recover money paid out as benefits during a member's lifetime as a claim against the estate." In re the Estate of Kendall, 486 Mass. 522 , 526 (2020). Under G. L. c. 118E, § 31(b), MassHealth is empowered to recover the value of provided benefits "from the estate of an individual [who died after April 1, 1995 and] who was sixty-five years of age or older when he or she received such assistance." G. L. c. 118E, § 31(b). See 130 Code Mass. Regs. § 515.011 (containing MassHealth regulations for estate recovery). In most instances, the Commonwealth's pursuit of estate recovery is not simply an option, but a mandate: under 42 U.S.C. § 1396p(b)(1)(C)(i), states receiving Medicaid funds are required to seek adjustment or recovery from estates for a broad category of services. See also Federal Exec. Office of Health & Human Servs. v. Fungaroli, 94 Mass. App. Ct. 1120 n.5 (2019) (Rule 1:28 Decision). The term "estate" is further defined as "all real and personal property and other assets includable in the decedent's probate estate under the General Laws." G. L. c. 118E, § 31(c). See also 130 Code Mass. Regs. § 515.011(A). 





 Real property held by a recipient at his or her time of death, therefore, may become subject to a MassHealth claim for recovery. For example, "where the house is the only asset in the applicant's estate and is sold by the estate after both spouses have died, the children will be able to inherit only the proceeds of the sale that exceed the amount of the MassHealth recovery claim." Daley v. Sec'y of Exec. Office of Health & Human Servs., 477 Mass. 188 , 195 (2017). The statute's imposition of a $2,000 cap on countable assets for eligibility does mean that "[i]ndividuals are expected to deplete their own resources before obtaining assistance from the government," and as a result, the real and personal property ultimately available for collection from the estate often may be quite limited. Guilfoil v. Secretary of the Executive Office of Health & Human Servs., 486 Mass. 788 , 790 (2021), quoting Lebow v. Commissioner of the Div. of Med. Assistance, 433 Mass. 171 , 172 (2001). [Note 12] Even so, as certain categories of real estate (such as a recipient's a principal place of residence) in many circumstances are not considered countable assets, it may be possible for one to receive benefits properly while choosing to retain title to real property until death. See 130 Code Mass. Regs. §§ 520.008(A), 520.007(G). [Note 13] 





 Here, MassHealth contends that the Property was includable in Papamechail's estate because she owned it in fee at the time of her death, and that accordingly, as provided in G. L. c. 118E, § 31(b), MassHealth is entitled to recover from the proceeds of the sale of the Property the value of benefits paid to her. MassHealth thus opposes reformation on the basis that, if the attempted conveyance from Papamechail to plaintiff and her sister is retroactively deemed effective as of 2003, it will unfairly prejudice MassHealth's ability to look to the Property (or the proceeds of its sale) for satisfaction of its claim against the estate. MassHealth urges the court to apply the principle outlined in General Builders Supply Co. v. Arlington Co-operative Bank, 359 Mass. 691 , 696 (1971), which expands on the general rule regarding reformation to single out subsequent lienholders as an unfairly prejudiced class. In that case, the court recognized that, "[a]lmost as important as the general rule [of reformation], and perhaps almost as frequently applied, is the limitation thereon to the effect that reformation will not be allowed where the rights of intervening lienors will be adversely affected thereby." Id. Though MassHealth acknowledges that it never did attach of record any lien to the Property, it contends that it might have elected to do so pursuant to 130 Code Mass. Regs. § 515.012 during Papamechail's lifetime had Papamechail properly given MassHealth notice of her continued fee ownership of the Property. [Note 14] The parties' briefs expend much effort sparring over whether MassHealth would have been able to secure a statutory lien on the Property during Papamechail's lifetime at all, which is a dispute hinging at least in part on inferences drawn from the evidence concerning the nature of the care she received; as such, it appears that the question whether or not such a lien would have been available may present a dispute of fact. 





 However, whatever dispute may exist on this point does not preclude award of summary judgment, as it does not concern a material fact. In the context of the statutory scheme as a whole, MassHealth's ability to have encumbered the property with a lien is largely inconsequential to the court's final analysis: counsel for MassHealth conceded at the hearing that it would be in no different a position today had it actually secured a recorded lien because its entitlement to and mechanism for recovery after death--G. L. c. 118E, § 31(b)--is not dependent on the prior creation of a recorded lien at all. The principal purpose of a MassHealth lien pursuant to G. L. c. 118E, §§ 31(d), 34 and 130 Code Mass. Regs. § 515.012 is to secure the potential to recover funds during the lifetime of the recipient, not after death. As this court (Roberts, J.) recently noted in its recent and thorough review of the relevant statutes, these MassHealth liens, in fact, dissolve upon the death of the benefit recipient, leaving § 31(b) as the proper mechanism for any recovery. See Wells Fargo Bank, N.A. v. Green, No. 19 MISC 000026, 2020 WL 1903828, at *9-*11 (2020) (Roberts, J.). See also J.A. Bloom, & P.C. D'Agostino, 56 Mass. Prac., Elder Law §§ 9:1 - 9.7 (2020). [Note 15] MassHealth has offered no real contention that it would have sought (or even would have been able) to make any recovery prior to Papamechail's death, and instead appears to accept fully that MassHealth's posture for collection as it stands now would be the same had it acquired a recorded pre-mortem lien. 





 The irrelevance of MassHealth's ability to impose a lien is not, however, fatal to its claim of prejudice. With or without such a lien, given the nature and function of MassHealth's statutory mechanism for recovery from the estate under § 31(b), it remains necessary here to apply here the same general standard employed by the court in Franz, 308 Mass. at 266 and the same reasoning underpinning the court's evaluation in General Builders, 359 Mass. at 696. Though not technically a lienholder in the traditional sense, at least as a matter of record, MassHealth's ability to recover from the estate ripened upon Papamechail's death. This places it in a position highly comparable to the type of interest holder addressed in General Builders, with a fully enforceable right to utilize the proceeds of any sale of the property to recoup funds already paid out. See General Bldrs., 359 Mass. at 696. Just as with any intervening lienholder, a reformation ordered by the court to date back to the period before MassHealth acquired such a right would undoubtedly prejudice MassHealth's vested ability to recover. Had reformation been sought prior to Papamechail's death, perhaps a better case might have been made that MassHealth held no such comparable, vested right and would not have been subjected to any prejudice. This action was not filed, however, until three months after Papamechail passed away. As this case now stands, plaintiff's contention that reforming the faulty deed nunc pro tunc to 2003, and thereby retroactively removing the Property from her estate, would not unfairly affect MassHealth is unavailing. MassHealth has the right, and indeed the statutory duty, to recover benefits from decedent recipients' estates. See G. L. c. 118E, § 31; 42 U.S.C. § 1396p(b)(1). There is no doubt that, because the Property never actually was transferred to plaintiff, it was includable in Papamechail's estate at her death, regardless whether it was recognized as such during any probate proceedings. A nunc pro tunc reformation of the deed would thus remove from Papamechail's estate a large real property holding, the value of which MassHealth otherwise would be entitled to access for reimbursement. 





 At its heart, plaintiff's reasoning to the contrary is fatally circular--the court can reform the faulty deed nunc pro tunc because the Property should not be considered part of Papamechail's estate, and the Property should not be considered part of Papamechail's estate because the court can reform the faulty deed nunc pro tunc. This does not overcome the obstacle that upon Papamechail's death, the Property, never having been conveyed out validly, was in fact owned of record by her, includable in her estate, and thus a valid asset from which defendant can recover. 





 It is worth addressing, though, plaintiff's briefly-articulated contention that MassHealth was put on notice of Papamechail's intended transfer, and therefore cannot now claim to be "unfairly" and unexpectedly affected by the reformation. [Note 16] Effectively, this argument relies on the legal distinction, drawn from cases such as Franz and General Builders, that prejudice typically is an impediment to reformation only when it affects an innocent third party without actual or constructive knowledge of the defective prior interest sought to be reformed. See Franz 308 Mass. at 266; Gen. Bldrs. Supply Co., 359 Mass. at 696 ("The limitation has been applied in numerous cases to protect persons standing in the position of innocent purchasers for value without notice of the mistake of fact on the basis of which reformation is sought."). Plaintiff contends that Papamechail provided notice of the deed and her attempt to retain but a life estate by attaching a property tax bill to her 2010 Eligibility Review form for MassHealth benefits. This form, filed as Exhibit 7 to plaintiff's motion, contains a question as to whether Papamechail held a legal interest in her primary residence, to which she answered "Yes." The form requested a copy of the deed, current tax bill, and proof of amount(s) owed on property in which she had an interest. Appended to the form in Exhibit 7 is a then-current property tax bill addressed to "Papamechail Mary Life Estate" and "Casey Carla," and listing the assessed owner as "Papamechail Mary Life Esta [sic]." Plaintiff thus suggests that for the past decade, MassHealth has not expected the Property to be includable in Papamechail's estate, and that, in essence, MassHealth is acting with unclean hands by suddenly asserting an interest which runs contrary to its long-held expectation. 





 The court is not convinced that, where the right to recovery arises under G. L. c. 118E, § 31(b), notice of the interest sought to be reformed would produce any real unfairness of the type envisioned by General Builders. Where a subsequent creditor does have knowledge of a defective prior interest, the logic behind ignoring any prejudice to that creditor flows from the fact that, with such knowledge, it nonetheless chose at its own risk to acquire its own interest in the property. The same reasoning does not apply, however, in any direct way to estate recovery under § 31(b), as that right arises automatically and only upon death, meaning a comparable degree of choice is not present. Whether MassHealth believed the property to have been conveyed away in 2003, or instead believed it to be still owned in fee by Papamechail (either through ignorance of the 2003 deed entirely, or awareness of that deed's defect), the proper course of action under its principal statutory mechanism for recovery would have been the same: to wait for its future claim against the estate to come into being upon her death. Moreover, plaintiff founds its reasoning on the argument that, if it previously was not expecting to have any right to the Property, MassHealth's assertion of a claim now is an unfair "windfall." This characterization is fundamentally flawed, as it ignores the fact that MassHealth's claim is not seizing on an opportunity for profit, but rather seeks repayment of services that indeed were already provided--there is no doubt that MassHealth laid out benefits totaling $176,499.79 to aid Papamechail, and MassHealth is undisputedly entitled and instructed by statute to recoup what it can of that debt from the estate. 





 Even were the court to embrace fully the proposition that MassHealth's knowledge of the instrument itself dispels any hint of unfairness, plaintiff's argument nonetheless would fail because neither the proffered form nor the fact of the deed's recording is sufficient to conclude that MassHealth was put on notice of the deed itself, with its palpable misdescription, or otherwise believed Papamechail to hold only a life estate in the property. It is necessary first to note that the Eligibility Review form was submitted with plaintiff's motion as an independent exhibit without any verifying affidavit. While the absence of such an affidavit in and of itself limits its admissibility and evidentiary value, [Note 17] just as problematic is the fact that there is very little evidentiary support, either within the document itself or by affidavit of one with personal knowledge, of the context of this form's actual transmission to MassHealth (including what documents, if any, actually accompanied it). [Note 18] Were such contextual evidence available, and the court then fully accepted plaintiff's alleged facts on this point, the form still would remain insufficient to create a dispute of fact regarding notice of the conveyance. The form states generally that Mary Papamechail still owned a legal interest in the property (a state of affairs no different from before the attempted transfer) and failed to include the deed in question as directed (which might have communicated her intent to change the nature of her interest from outright fee to a life estate alone). There is very little from which MassHealth might have developed an understanding that the status of her ownership had changed, and the content of the tax bill allegedly submitted with this form is not sufficient by itself to raise a dispute of fact on this point. 





 Indeed, further undermining any contention that MassHealth had sufficient actual notice of the attempted transfer is the fact that this form is dated as of 2010, seven years after the deed was executed. Under G. L. c. 118E, § 29, any individual receiving medical assistance through MassHealth must notify MassHealth of any transfer of any interest in real or personal property, including the dollar value paid or received by the benefits recipient. Though Papamechail was indisputably receiving MassHealth benefits at the time, plaintiff has not provided any evidence to indicate MassHealth was notified in 2003 of the attempted transfer of the Property. 





 The only remaining indicium on which plaintiff might rely to show MassHealth's knowledge is the fact of the defective deed's recording. It is true that under G. L. c. 183, § 4, interests in property become effective against third parties when evinced by an instrument recorded in the registry of deeds; however, the fact that recording renders a deed valid against third parties is not the same as considering the act of recording to provide unequivocal knowledge of a document's existence to the world for all conceivable purposes. See, e.g., Bates v. Norcross, 14 Pick. 224 , 231 (1833) (recording of a deed by one who had no right to convey the land did not give constructive notice to the actual owner of the deed's existence); Dixon v. Smith, 181 Mass. 218 , 221 (1902). Cf. Allen v. Allen, 86 Mass. App. Ct. 295 , 300 (2014) (holding that a latent defect in deed's acknowledgement prevented the fact of its recording from giving constructive notice under § 4). Within the court's evaluation of fairness and prejudice, the recording of a substantially defective deed is not sufficient by itself to impute to MassHealth knowledge of the instrument's execution. Here, the deed itself was ineffective for the reason that it failed to describe the property that Papamechail intended to convey, referring instead to an entirely different parcel. This is a fundamental defect in the instrument's very identification of the property to which it is intended to apply. An error of this type and degree greatly inhibits or even entirely strips its ability to act, in this circumstance, as convincing evidence that MassHealth was on notice of the state of the Property's ownership. A simple look at the deed would have shown that, as drafted and recorded, it concerned a parcel other than the Property. 





 For the above reasons, the record here most certainly is not sufficient to award summary judgment in plaintiff's favor. In considering MassHealth's own cross-motion for summary judgment, the court is obliged to draw all reasonable inferences in plaintiff's favor; however, it would be patently unreasonable for the court first to infer from the present record that notice of the conveyance was provided to MassHealth, and then to draw the subsequent conclusion as a matter of law that notice of the instrument fully counterbalances the clear prejudice MassHealth will experience. The court concludes that, on the undisputed facts of this case, plaintiff is not entitled to a nunc pro tunc reformation of a sort that would prejudice MassHealth's ability to recover on its claim against the estate. 





 It is important to note that this does not mean that the court must refrain from reforming the deed, but rather that any reformation will not avoid MassHealth's claim against the estate. Where reformation is otherwise justified but would unfairly prejudice a party, it still may be ordered by the court so long as the rights of the prejudiced party are preserved. See Gen. Bldrs., 359 Mass. at 698; Hillside Co-op. Bank v. Cavanaugh, 232 Mass. 157 , 161 (1919); Fleet Bank v. Cassin, 2 LCR 9 , 10 (1994) (Cauchon, J.). The parties themselves have purposefully placed this case in a posture where such reformation may be accomplished easily. Here, the parties earlier agreed (and the court accordingly ordered) that plaintiff could convey the property to a third party during the pendency of the case as if she held clear title (despite the issue of reformation not yet having been adjudicated), and that the proceeds of the sale would be held in escrow. They agreed that no party to this action would there thereafter have any claim to the title to the Property, and that their claims would be limited instead to the net funds generated by the sale. [Note 19] Counsel reported at the hearing on the cross-motions for summary judgment that the Property already had been sold to a third party pursuant to that directive. This arrangement indicates that the parties have no quarrel with the Property passing from plaintiff to this third party purchaser as a matter of title, and reformation is necessary for that conveyance to have taken effect validly. MassHealth's right to pursue recovery is preserved notwithstanding that reformation, as the parties have agreed, and the court has ordered, that the third-party sale proceeds may be deemed a recoverable asset of the estate in lieu of the Property itself. 





CONCLUSION 





 Plaintiff's motion for summary judgment is DENIED, and MassHealth's motion for ummary judgment is ALLOWED. A judgment will enter reforming the deed and declaring, as a condition of that reformation, that, in a claim for recovery of the value of benefits paid under G. L. c. 118E, § 31(b), the proceeds of the Property's sale to a third part may be considered property of the estate from which MassHealth properly may recover. 





 Judgment accordingly. 





FOOTNOTES
[Note 1] The court employs the shorthand name that the Secretary and the Massachusetts Executive Office of Health and Human Services has employed throughout the case. 

[Note 2] Though MassHealth's original counterclaim contended that it had placed "at least one" recorded lien on the property and its right to recovery arose from G. L. c. 118, § 31(d), its amended counterclaim clarified that no lien had ever been placed of record, removed MassHealth's reliance on § 31(d), and instead generally asserted its ability to recover from the estate under § 31 (presumably, as explained in its summary judgment filings, relying on § 31(b) in particular). 

[Note 3] Complaint, Ex. C. 

[Note 4] Defendant's Statement of Facts in Support of its Opposition to Plaintiff's Motion for Summary Judgment and Motion for Summary Judgment in its Favor Pursuant to Mass. R. Civ. P. 56(c) ("Defendant's Statement") p. 3 ¶ 1; Plaintiff's Concise Statement of Material Facts In Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Statement in Opposition") ¶ 1. 

[Note 5] Defendant's Statement, p. 3 ¶ 2; Plaintiff's Statement in Opposition ¶ 2. Given (1) plaintiff's response that the claimed value of paid benefits is "[n]either admitted nor denied," (2) the lack of citation by plaintiff to any evidentiary support indicating that the claimed amount is incorrect, see Mass. R. Civ. P. 56(e), and (3) the parties' prior joint motion requesting the claimed amount be held in escrow, the amount claimed by MassHealth must be deemed undisputed for the purposes of summary judgment. 

[Note 6] Complaint, Ex. A. 

[Note 7] Plaintiff's Concise Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Statement") ¶ 2; Defendant's Statement ¶ 2; Complaint, Exs. A, B. 

[Note 8] Plaintiff's Statement ¶ 2; Defendant's Statement ¶ 2. 

[Note 9] Complaint, Exs. B, C. 

[Note 10] Plaintiff's Statement ¶ 4; Defendant's Statement, ¶ 4; Complaint, Ex. D. 

[Note 11] Complaint, Ex. E. 

[Note 12] A common strategy to "spend down" assets to ensure eligibility is to convey title real property away while retaining a life estate, as a "life estate is not a countable asset for Medicaid eligibility purposes." Guilfoil, 486 Mass. at 789. See Daley, 477 Mass. 188 , 192 (2017). 

[Note 13] It is worth noting that the underlying facts regarding Papamechail's receipt of benefits despite her record ownership of the Property have not been made clear by the parties. It is not apparent from the summary judgment record whether the Property was Papamechail's principal place of residence, or if she was considered eligible while owning the Property for some other reason. To the extent that MassHealth's brief indicates in passing that it could be possible that Papamechail received benefits to which she was not entitled due to possession of the property in fee, it does not provide further explanation or support for this point and does not present any argument adequate for consideration by the court. 

[Note 14] It is necessary to note that MassHealth's briefing is quite unclear on whether it intends to argue (1) that it was unaware of Papamechail's continued fee ownership after the failed deed, and that, had it been aware, it would have pursued recording a lien at some point between the deed's execution and the time of her death; or (2) that it was never made aware of Papamechail's ownership of the property at all, and would have sought to acquire a lien at some earlier point. However, at the hearing, counsel for MassHealth clarified its position to be that it would have sought to impose a lien in 2018, which is the point at which MassHealth alleges Papamechail to have begun receiving nursing home care. The court accordingly need not address any possibility that MassHealth might have acquired a lien prior to 2003 which then might have affected the 2003 conveyance. There is, in any event, no evidentiary support in the record for a claim that Papamechail failed to inform MassHealth from the inception of her benefits that she held title to the Property. 

[Note 15] Indeed, MassHealth's power to recover from the deceased's estate under § 31(b) itself differs little in practical function from the manner in which any other traditional debt or lien would be recovered after death; unsurprisingly, its priority in relation to other such claims thus is afforded an expressly-defined place by G. L. c. § 3-805. See Kendall, 486 Mass. at 526 (2020) (discussing MassHealth estate recovery relative to claims of other creditors). 

[Note 16] Its argument on this point is essentially confined to the following: "All concerned, including Mary Papamechail, Carla Casey, the City of Peabody ... and MassHealth (which received the property tax bill with the Eligibility Review application submitted by Mary Papamechail) believed that her sole interest in her home was a life estate, and what benefits she received from MassHealth was on that basis. An order of reformation cannot therefore unfairly' affect MassHealth, particularly since it does not have a lien that would be extinguished thereby. MassHealth is simply left in the position it expected to be following the death of Mary Papamechail." Plaintiff's Motion for Summary Judgment, p. 4. 

[Note 17] See Mass. R. Civ. P. 56(e) and Land Court Rule 4 (motions may be supported by affidavit, depositions, or answers to interrogatories). 

[Note 18] Plaintiff did submit an affidavit of her own in support of the motion for summary judgment; however, it addresses only the drafting of the deed in 2003, and makes no mention of the form or the circumstances of its execution. There is similarly scant information in the record or the parties' briefs of the document's vintage and provenance. The record really only discloses, concerning the document's origins, (1) MassHealth's admission that the document was provided to plaintiff during discovery; and (2) a stamp on one of the document's pages that states "Transition Received Jun 23 2010." 

[Note 19] See the court's April 9, 2019 docket entry, and the Interim Order Relating to Sale of Property issued by the Court on April 12, 2019. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.